**KRISS & FEUERSTEIN LLP**
Jerold C. Feuerstein, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
(212) 661-9397 – facsimile
jfeuerstein@kandfllp.com
skossar@kandfllp.com

*Attorneys for 1414 Utica Avenue Lender LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| Cort & Medas Associates, LLC, | Case No.  1:19-41313-cec |
| Debtor. | Hon. Carla E. Craig<br>Chief United States Bankruptcy Judge |

----------------------------------------------------------X

**1414 UTICA AVENUE LENDER LLC'S REPLY TO THE RESPONSE OF EMPIRE STATE DEVELOPMENT CORPORATION AND IN FURTHER SUPPORT OF ITS MOTION FOR THE ENTRY OF AN ORDER DETERMINING THE PRIORITY, NATURE AND AMOUNT OF ITS CLAIM, AND ALSO THE PRIORITY, NATURE AND AMOUNT/OBJECTION TO THE CLAIM OF SUBORDINATE MORTGAGEE, EMPIRE STATE CERTIFIED DEVELOPMENT CORPORATION**

TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

1414 Utica Avenue Lender LLC ("Secured Creditor" or "1414 Lender"), a secured creditor and mortgagee of the Debtor, Cort & Medas Associates, LLC (the "Debtor"), by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this response (the "Reply") to the Response Brief [ECF No.: 116] (the "Opposition") of Empire State Certified Development Corporation ("ESCDC") and in further support of its Motion (the "Motion") for the entry of an Order (i) pursuant to 11 U.S.C. §§ 101(5), 105(a), 501(a) 502(a) and Federal Rules of Bankruptcy Procedure 3001, 3007, 3012 (a) declaring that the Secured Creditor is the holder of a claim Secured

Creditor's Claim (Claim No. 7-1) (the "<u>Secured Creditor's Claim</u>") pursuant to, *inter alia*, that first lien mortgage encumbering the real property of the Debtor, (b) which is entitled to payment prior in time to any claim (or lien) of subordinate mortgagee, ESCDC (defined below), and to the extent that this Court determines that the ESCDC should otherwise be entitled to any payment on account of that certain proof of claim filed by subordinate mortgagee, ESCDC Claim (Claim No. 6-1) (the "<u>ESCDC Claim</u>") prior in time to that of the Secured Creditor, alternatively, (c) determining that the amount of the ESCDC Claim to be entitled priority as of March 31, 2020 was not more than $154,995.00, and (ii) granting such further and different relief as the Court may deem just and proper. In further support of its Motion, the Secured Creditor respectfully represents as follows:

**PRELIMINARY STATEMENT**[1]

1.      Simply, this dispute is about the ESCDC's predecessor-in-interest (the "<u>Predecessor</u>") falling asleep at the wheel after being named in, *and after appearing in* a litigation (the "<u>Foreclosure Action</u>") which was brought specifically for the purposes of determining all parties right, title and interest, and claims, in and to, the Property.

2.      None of the ESCDC's blustering in the Objection can change the fact that the Verified Complaint which was served upon the Predecessor, expressly provided that *all defendants named have or claim to have some claim to, interest in or lien upon the Mortgaged Premises or some part thereof, which claim, interest or lien, if any, has accrued subsequently or otherwise been subordinated to Plaintiff and the lien of Plaintiff and, therefore, is subordinate to Plaintiff's mortgage lien.* The Predecessor was a named defendant in the Foreclosure Action, and as a result,

---

[1] Capitalized terms used but not defined herein shall have the same meaning given to them as ascribed them in the Motion (as defined herein).

its rights in and to the Property as between it and the Secured Creditor were necessarily affected by the determinations and final judgments of the Supreme Court of the State of New York, County of Kings (the "State Court") and the ultimate outcome of the Foreclosure Action.

3.      As a direct result of the Predecessor's shortcomings and inaction, a Judgment of Foreclosure was entered by the State Court, in favor of the Secured Creditor and against various defendants, including the Predecessor, on or about October 3, 2017 (the "JFS"), which was entered for the express purpose of establishing the priority of liens and claims as between the Secured Creditor and *all* named defendants in the Foreclosure Action, including, but not limited to any rights involving the liens and/or claims of the Predecessor, and the time to appeal has long expired.

4.      In point of fact, the JFS expressly provided that *each and all of the defendants in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and chattel and each and every party thereof.* Entry of the JFS had a direct impact upon the ESCDC's rights, including the nature and extend of its claim and lien as to the Secured Creditor, regardless of any positions the parties may have taken prior to entry of the JFS - all of which were placed in dispute when the Complaint was filed naming the Predecessor.

5.      Nothing raised by the ESCDC as contained in the Opposition, changes the fact that entry of the JFS by the State Court triggered the doctrines of both Rooker-Feldman and *res judicata* which necessarily serve to preclude this Court from reconsidering the merits of the JFS, and further preclude this Court from serving as an appellate court to the State Court in connection with the JFS.

6.      To the extent that the ESCDC seeks to enforce that certain Third Party Lender

Agreement (the "Agreement"), it should be required to return to State Court, vacate or seek to amend the JFS, and thereafter, if necessary (or possible), come back before this Court for a determination.

7.    Scrambling to recover from its predecessor's inaction, the ESCDC raises a myriad of unsupportable, red-herring arguments to distract this Court from the points of law established by the doctrines of both Rooker-Feldman and *res judicata*, which include (a) that this Court has the ability to enforce the Agreement against the Secured Creditor pursuant to 11 U.S.C. § 510(a), (b) that the Predecessor did not waive its rights in the context of the Foreclosure Action, (c) that the foregoing and well-settled doctrines of Rooker-Feldman and *res judicata* are somehow inapplicable and (d) that only subordinate creditors are necessary defendants in a foreclosure action.

8.    Unpacking these contrived points, this Court must bear in mind that the ESCDC and the Predecessor were, and remain as subordinate creditors as determined by the JFS, regardless of the fact that their subordinated status originated from the Agreement.

9.    Next, while bankruptcy courts have the ability to enforce subordination agreements generally under 11 U.S.C. § 510(a), this Court's ability to enforce the Agreement between the parties in this dispute was foreclosed when the JFS was entered and the parties' respective rights to payment and priority were adjudicated.

10.    To the extent that this Court seeks to enforce the Agreement in a manner which is contradictory to the JFS, it would be doing so in violation of well-settled doctrines of Rooker-Feldman and *res judicata*.

11.    It is not only circular, but illogical for the ESCDC to on the one hand, suggest that only subordinate creditors are necessary defendants in a foreclosure action for the purposes of

suggesting that its rights could not be affected by the JFS, when its Predecessor expressly subordinated its lien (and ultimately its claim upon entry of the JFS) to the Secured Creditor.

12.    Finally, with respect to that portion of the Opposition which takes issue with the manner in which the Secured Creditor has applied payments it received from the Debtor, it is respectfully submitted that the ESCDC is not, and never was a party to the underlying agreement and/or loan documents, and is therefore not in a position to dictate terms by which the Secured Creditor must account to the Debtor, especially in such a manner which is contradictory to the loan documents. Specifically, Section 7 of the underlying Note expressly provides that the Secured Creditor may apply payments received in connection with the Loan in its *sole discretion*. As previously set forth in the Motion, the ESCDC has failed to come forward with any case law or statutory authority to suggest that it may determine how payments received in connection with the Loan should be applied.

13.    Here, the ESCDC relies upon the Agreement at Section 9(b) for the proposition that to the extent that the lien of the Secured Creditor secures any amounts attributable to Default Charges (as defined therein), the Secured Creditor's lien will be subordinate to the lien of the ESCDC. Assuming, *arguendo*, that the ESCDC were in a position to enforce Section 9(b) of the Agreement (which it is not), as set forth more fully below, the ESCDC would in any event, be limited to obtaining a priority interest payment of $154,995, which

14.    Based on the foregoing, the Motion should be granted in entirety.

## ARGUMENT

## POINT I

## THE MOTION TO FIX THE SECURED CREDITOR'S CLAIM SERVES ALSO AS AN OBJECTION TO THE ESCDC'S CLAIM UNDER 11 U.S.C. §502(A)

15.    The ESCDC provides that the Motion should not serve as an objection to the

ESCDC's claim under 11 U.S.C. § 502(a). [*See* Response, pp. 10]. However, the Motion is a claim objection. Here, the value of the Property is less than the indebtedness of the Secured Creditor and the ESCDC. Therefore, any a determination of the Secured Creditor's Claim must impact the ESCDC Claim. As such, and in connection with the Motion, the Secured Creditor objected to the allowance of the ESCDC's claim in full.

16.    In addition, 11.U.S.C. § 510 does not serve as a prohibition against Secured Creditor from seeking a declaration of the amount of its claim. [*See* Response, pp. 10-11]. Notably, the ESCDC sets forth no provision that the instant Motion to determine the priority of claims is barred and also is willing to have this Court issue a ruling regarding the priority of default interest. [*See* Response, pp. 10].

17.    Thus, the Court can adjudicate this matter.

## POINT II

### THE ESCDC IS BARRED BY ROOKER-FELDMAN FROM RE-LITIGATING THE JFS IN THIS FORUM

18.    The ESCDC's claim that, notwithstanding the *Rooker-Feldman* doctrine, this Court should review the State Court's finding in the JFS is without legal basis. The ESCDC had the opportunity to raise and litigate the Third Party Agreement in the State Court. Indeed, ESCDC was named a party defendant in the State Court and was on notice of Secured Creditor's claim to priority over ESCDC's interest as clearly stated in Paragraph 64 of the Complaint:

> Upon information and belief, all defendants named in this action have or claim to have some claim to, interest in or lien upon the Mortgaged Premises or some part thereof, **which claim interest or lien, if any has accrued subsequently or otherwise been subordinated to Plaintiff** and to the lien of Plaintiff, and there is subordinated to Plaintiff's mortgage lien.

(Complaint, **Ex. A**, ¶ 64 (emphasis added)).

19.    Despite receiving notice of Secured Creditor's claim that its lien (the entirety of its

6

lien without distinction made as to default interest charges) holds priority over the ESCDC's lien, ESCDC did nothing.  In fact, ESCDC submitted a notice of appearance in the State Court acknowledging that it had no dispute that the First Cause of Action of Secured Creditor's Complaint claimed priority over ESCDC's lien.

20.    Again, when Secured Creditor applied on notice to the State Court for JFS, wherein Secured Creditor sought and was awarded priority over ESCDC's claim, ESCDC still did nothing. To clarify this point, Secured Creditor refers to the payment waterfall detailed in pages 5 through 7 of the JFS providing for payment from the proceeds of the foreclosure sale in the following order:

> (i)    "statutory fees and commissions of said Referee";
>
> (ii)    "expenses of the sale";
>
> (iii)    "taxes, assessments, sewer rents, water rates and any charges placed upon the property by a city agency which have priority over the foreclosed mortgage"; and
>
> (iv)    "Referee shall then pay to the [Secured Creditor] or its attorney the sum of $1,865,216.29 [which amount includes default interest], the said amount so reported due as aforesaid, together with interest thereon pursuant to the terms of the Note from January 1, 2007, the date the interest was calculated to in said Report, to the date of entry of this Order at the rate of $824.33 per day, and thereafter at the statutory post-judgment rat to the date of transfer of title . . ."

The JFS dictates that Secured Creditor's entire claim, including any default interest accrued on its debt, shall be paid before ESCDC receives a nickel.  Moreover, the *Rooker-Feldman* doctrine dictates that the JFS cannot be relitigated in this forum.

21.    To the extent the ESCDC seeks to assert state law claims based on the Third Party Agreement, it needs to go to the State Court to assert this argument due to the JFS.  More specifically, the ESCDC would need to seek leave from this Court to return to the State Court and claim the JFS itself violates the Third Party Agreement's prohibition against using state law foreclosure procedures.  However, ESCDC has not asserted this argument in State Court or sought

leave from this Court.

22.    Relying on two allegedly similar cases, ESCDC asserts that this Court has the authority to overturn the JFS.  This is patently false.  In both cases cited by ESCDC, *Highland Park CDP I Grantor Trust v. Wells Fargo Bank, N.A.,* 2009 U.S. Dist. Lexis 53272 (S.D.N.Y. June 19, 2009) and *Wells Fargo Bank, N.A. v. Cept 5, Inc.*, 2011 U.S. Dist. Lexi 656654 (S.D. Ind. June 20, 2011) [*See* Response, pp. 11-12], a third-party creditor timely, *i.e.* prior to the entry of judgment, challenged the priority of a foreclosing lender's lien.  For example, in *Wells Fargo Bank, N.A. v. Cept 5, Inc.*, 2011 U.S. Dist. Lexis 656654 (S.D. Ind. June 20, 2011), the SBA submitted opposition to the foreclosing lender's application for judgment.  Here, however, the ESCDC did not oppose any of the Secured Creditor's noticed claims of priority over the ESCDC's lien.

## POINT III

### THE JFS DETERMINED THE PRIORITY OF SECURED CREDITOR'S LIEN

23.    The ESCDC's claim that the Third Party Agreement conflicts with the JFS is nothing more than a red herring.  The JFS is dispositive as to the priority of Secured Creditor's and ESCDC's rights.  The JFS provides that Secured Creditor's claim, including without limitation interest accrued at the default rate, is to be paid before ESCDC's claim is paid.  To the extent that ESCDC disputes this finding – a finding with *res judicata* effect – ESCDC must litigate this issue in the State Court.

24.    As detailed above, *Wells Fargo Bank, N.A. v. Cept 5, Inc.*, 2011 U.S. Dist. Lexi 656654 (S.D. Ind. June 20, 2011) is inapplicable because ESCDC did not timely dispute the Secured Creditor's claims in the State Court.

## POINT IV

**SBA/ESCDC WAS PROPERLY NAMED IN THE FORECLOSURE ACTION AS A SUBORDINATE LIENHOLDER**

25.    The ESCDC acknowledges that subordinate lienholders are necessary party defendants in a mortgage foreclosure action.  The ESCDC further acknowledges that its predecessor in interest, the SBA, was properly named as a party defendant in the mortgage foreclosure action because its lien is subordinate to Secured Creditor's Mortgage.  However, the ESCDC then claims that because the Complaint does not explicitly plead the Mortgage's priority over "SBA's senior lien", the Complaint somehow tacitly acknowledges that interest accrued on the principal amount of the Mortgage at the default rate is subordinate to ESCDC's lien.

26.    First and foremost, the *Rooker-Feldman* doctrine governs.  The JFS is dispositive as to the seniority of the Secured Creditor's claim which claim includes interest accrued at the default rate.

27.    Second, the Complaint does not distinguish between the portion of the Mortgage that secures contract rate interest and the portion of the Mortgage that secures default rate interest less contract rate interest.  To the contrary, the Complaint pleads that the Mortgage – all of the debt secured by the Mortgage – is senior to the SBA's lien.  Paragraph 64 of the Complaint pleads the following:

> Upon information and belief, all defendants named in this action have or claim to have some claim to, interest in or lien upon the Mortgaged Premises or some part thereof, **which claim interest or lien**, if any has accrued subsequently or otherwise been subordinated to Plaintiff and to the lien of Plaintiff, and, therefore, is **subordinate to Plaintiff's mortgage lien**.

(Complaint, **Ex. A**, ¶ 64).  All defendants named in the Foreclosure Action, including SBA, has or claims to have "some claim to, interest in or lien upon the [Property]", which claim – in its entirety – "is subordinate to Plaintiff's mortgage lien."

9

28.    The express language of the Complaint is indisputable: the SBA was named a defendant in the Foreclosure Action because its claim to the Property is subordinate to the Secured Party's claim.

## POINT V

### SECURED CREDITOR EXPLICITLY PLEAD IN ITS COMPLAINT THAT ITS LIEN IS SENIOR TO THE SBA/ESCDC LIEN

29.    The JFS is final as to the Secured Creditor's priority.  "A judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and concludes all matters of defense which were or might have been litigated in the foreclosure action." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, (E.D.N.Y. 2016), quoting *Long Island Sav. Bank v. Mihailos*, 269 A.D.2d 502, 503 (2d Dep't 2000).

30.    The ESCDC cannot collaterally attack the JFS in this forum by claiming the State Court disregarded the Third Party Agreement or the allegations raised in the Complaint.  "A federal court must give a state court judgment the same preclusive effect that it would have in that state's court." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, (E.D.N.Y. 2016), citing *Green v. Montgomery*, 219 F.3d 52, 55 (2d Cir. 2000) and *Colon v. Coughlin*, 58 F.3d 865, 869 n. 2 (2d Cir. 1995).  "Under New York law, res judicata (or claim preclusion) 'bars future litigation of claims that were or could have been raised in a prior proceeding where that prior proceeding resulted in a final judgment on the merits.'" *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146-147 (E.D.N.Y. 2016), quoting *Beckford v. Citibank N.A.*, No. 00 CV 205 DLC, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000).  "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422-423 (S.D.N.Y. 2008), quoting *Sosa v. JP Morgan Chase Bank*, 33 A.D.3d 609,

611 (2d Dep't 2006).

31.    Assuming, *arguendo*, that this Court would cast aside the bedrock framework of *Rooker-Feldman* and entertain such a collateral attack, though the ESCDC has submitted no legal authority for doing so, the Secured Creditor did in fact claim priority over the ESCDC's lien in the Complaint.  As quoted above, the First Cause of Action of the Complaint pleads that the Secured Creditor's lien (the entirety of its lien) is senior to the claims, interests and/or lien of any party defendant (which includes without limitation any and all claims, interests and/or liens held by the SBA):

> Upon information and belief, all defendants named in this action have or claim to have some claim to, interest in or lien upon the Mortgaged Premises or some part thereof, **which claim interest or lien**, if any has accrued subsequently or otherwise been subordinated to Plaintiff and to the lien of Plaintiff, and, therefore, is **subordinate to Plaintiff's mortgage lien**.

(Complaint, **Ex. A**, ¶ 64).

32.    The Complaint clearly and unequivocally states that any and all claims, interests, and/or liens held by party defendants are subordinate to the Secured Creditor's lien. *See* Complaint, **Ex. A**, ¶ 64.  The SBA was a party defendant named in the Complaint that in fact acknowledged receipt of the Complaint and that it had no dispute to the priority of the Secured Creditor's claim by serving and filing a Notice of Appearance in the Foreclosure Action.

33.    The ESCDC's belated claim that the above language should be ignored because it is "boilerplate" is ridiculous and neither of the three antiquated cases cited for this proposition are applicable.  In *Tax Lien Co. v. Schultze*, 213 N.Y. 9, 14 (N.Y. 1914), *Jasper v. Rozinski*, 228 N.Y. 349, 357 (N.Y. 1920), and *Jacobie v. Mickle*, 144 N.Y. 237, 239 (N.Y. 1894), party defendants held independent subordinate and senior interests in real property and the relevant pleadings did not explicitly identify said defendant's senior interest.  As such, the judgment entered in each of

the above three cases did not cut off the party defendant's unidentified senior interest. Here, on the other hand, the Complaint pleads that the SBA is named a party defendant by virtue of a certain mortgage dated December 29, 2009 and recorded against the Property, which mortgage is exhibited to the Complaint. *See* Complaint, **Ex. A**, ¶ 24. In sum, the Complaint identifies in detail the SBA's interest in the Property and asserts that the Secured Creditor's interest, in the form of the Mortgage, has priority over the SBA's identified interest.

## POINT VI

### THE DOCTRINES OF ROOKER-FELDMAN AND RES JUDICATA BAR REVIEW OF THE JFS

34.    The ESCDC misapplies the doctrines of *Rooker-Feldman* and res judicata based on its erroneous assumption (as stated above) that the JFS is not determinative of the priority of default interests. [*See* Response, pp. 19-22].

35.    Under the *Rooker-Feldman* doctrine, ESCDC cannot relitigate these claims. As noted in its Motion, there are four requirements for the application of the *Rooker–Feldman Doctrine*:

 a.   the federal-court plaintiff must have lost in state court,

 b.   the plaintiff must complain of injuries caused by a state-court judgment,

 c.   the plaintiff must invite district court review and rejection of that judgment, and

 d.   the state-court judgment must have been rendered before the district court proceedings commenced, i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

36.    Here, all four of the elements of *Rooker-Feldman* have been met. First, SBA appeared in the Foreclosure Action and lost in the state court as the JFS has determined SBA's interest is extinguished and payment of default interest is to be paid to Valley. Second, the ESCDC is complaining of injuries caused by the State Court as the JFS extinguishes the ESCDC's rights

with to priority with respect to default interest. Third, the ESCDC is asking this Court to reject the JFS to the extent the JFS determined ESCDC's interest is extinguishes and priority relating to default interest.  Fourth, the JFS was clearly issued prior to the commenced of the instant bankruptcy case.  As such, the JFS binds the ESCDC with respect to priority of default interest and under the Rooker-Feldman doctrine, ESCDC cannot relitigate these claims.

37.     Similarly, the doctrine of *res judicata* would also preclude ESCDC claims. As noted in the Motion, in a foreclosure action, when a court has issued a final judgment on the merits, *res judicata*, precludes those same parties from relitigating not only issues that were litigated but also those that could have been raised in that action." *Sharp v. Inc. Vill. of Farmingdale*, 2017 U.S. Dist. LEXIS 135405 (E.D.N.Y. 2017); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 381 (2d Cir. 2003) ; *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983).  Again, SBA was named as party defendant in the Foreclosure Action and appeared by filing a Notice of Appearance and Waiver as such, it cannot undo the State Court's determination that its claims are extinguished and Secured Creditor has priority over default interest.

38.     Accordingly, ESCDC is precluded from seeking to relitigate issues of priority pursuant to the doctrines of *Rooker-Feldman* and *res judicata*.

## POINT VII

**ALTERNATIVELY, NO MORE THAN $154,995.00 IS ATTRIBUTABLE TO DEFAULT INTEREST THAT IS SUBORDINATE TO ESCDC**

39.     Although not disputing Secured Creditor's mathematical computations, the ESCDC incorrectly claims that Secured Creditor is ignoring the spirit of the Third Party Agreement by providing a snapshot of the amount due under its loan and default interest is $596,204.10 based on the JFS.  [*See* Response, pp. 22-23

40.     As an initial matter, the ESCDC's argument is circular. ESCDC is claiming that the

JFS is not determinative of any priority and extinguishing SBA's interests but then also asserts the JFS should determine the amount of default interest awarded to ESCDC.  The JFS provides that the Secured Creditor is entitled to payment of the outstanding indebtedness, including interest accrued at the default rate prior to ESCDC. Moreover, since the entry of the JFS, Secured Creditor has received payments from the Debtor, which have been applied to pay down default interests amount pursuant to the Loan Documents.

41.     The Note provides broad latitude for the Secured Creditor to determine how payments under the Loan should be applied. More specifically, Section 7 of the Note, entitled application of payments provides in pertinent part:

> "7. Application of Payments. Each and every payment made by Maker to Holder in accordance with the terms of the Mortgage and the Loan Documents and all other proceeds received by Holder with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) first, if applicable in accordance with the terms of this Note, to all premiums and other sums payable hereunder or under the Mortgage or any of the Loan Documents (other than pursuant to subdivisions (b) or (c) of this Section 7), (b ) second, to all interest at the Interest Rate which shall be due and payable under this Note; and (c) third, in reduction of the outstanding balance of the Principal Sum, or in such other order and priority as determined by Holder in its sole discretion…"

(*See* **Exh. A, ¶ 7**).  The Note also provides that payments shall that the "Interest Rate" defined at the rate of 7% per annum. (*See* **Exh. A,** pg. 1).

42.     These provisions permits the Secured Creditor to apply payments under the Loan in its sole discretion at the applicable interest rate to the indebtedness.  In its "sole discretion", the Secured Creditor may apply payments first to paying down interest accrued at the default interest rate.

43.     The Secured Creditor's contractual right is not subject to challenge, especially from an entity that is not even party to the loan agreement entered into between the Debtor and the Secured Creditor's predecessor in interest.  "Courts will not rewrite contracts, parties to a contract

14

will be held to the terms upon which they agreed be held to the terms upon which they agreed." *Moses v. Apple Hospitality REIT Inc.*, 2016 U.S. Dist. LEXIS 136611 (E.D.N.Y. 2016), citing *Am. Standard Homes Corp. v. Reinecke*, 245 Va. 113, 122, 425 S.E.2d 515, 9 Va. Law Rep. 776 (1993). A "court may not write into a contract conditions the parties did not insert or, under the guise of construction, add or excise terms, and it may not construe the language in such a way as would distort the apparent meaning." *Cohen v. Davidson v. Davidson*, 291 A.D.2d 474 (2d Dep't 2002). Thus, the ESCDC does not have any right to determine how the payments under the Loan should be applied.

44.     As noted in its Motion the default interest is determined *after* applying payments as permitted under the Loan Documents, the default interest is $154,995 as of March 31, 2020.

## **CONCLUSION**

45.     SBA failed object to any aspect of the Foreclosure Action,  including but not limited to, the application for the JFS (which sought to have the State Court determine the priority of interests in and to the underlying Property). To permit ESCDC to now reverse its position would lead to the inequitable result of a defendant appearing by counsel in state court, waiving its claims and then abruptly changing their position by resurrecting a defense that they failed to raise in the State Court.

46.     Accordingly, the Motion should be granted in its entirety.

**WHEREFORE**, Secured Creditor respectfully requests that this Court grant its Motion in its entirety and together with such further and different relief as the Court may deem just and proper.

Dated: New York, New York
      June 24, 2020

                                       KRISS & FEUERSTEIN LLP
                                       *Attorneys for 1414 Utica Avenue Lender LLC*

                                       */s/Jerold C. Feuerstein*
                                       Jerold C. Feuerstein, Esq.
                                       Stuart L. Kossar, Esq.
                                       360 Lexington Avenue, Suite 1200
                                       New York, New York 10017
                                       (212) 661-2900