UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                        Chapter 11

CORT & MEDAS ASSOCIATES, LLC,                 Case No. 19-41313 (CEC)

                    Debtor.
---------------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING AN AUCTION SALE FOR THE REAL PROPERTIES KNOWN AS AND LOCATED AT 1376 AND 1414 UTICA AVENUE, BROOKLYN, NEW YORK 11203, FREE AND CLEAR OF ALL MONETARY LIENS, CLAIMS AND ENCUMBRANCES, WITH SUCH MONETARY LIENS, CLAIMS AND ENCUMBRANCES TO ATTACH TO THE PROCEEDS OF SALE; AND APPROVING THE TERMS OF SALE AND BIDDING PROCEDURES FOR THE DEBTOR'S PROPERTIES**

**UPON** the motion (the "Motion") of Cort & Medas Associates, LLC, the debtor and debtor in possession (the "Debtor") and proponent of the Second Amended Plan of Reorganization, As Modified dated August 13, 2020 (the "Plan"), seeking the entry of an order, in accordance with §§ 105, and 363 and 365 of title 11, United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006, Local Rule 6004-1: (a) authorizing and approving the terms and conditions for the sale ("Sale") for the real properties known as and located at 1376 and 1414 Utica Avenue, Brooklyn, New York 11203 (Block: 4784, Lots: 20 & 35) (the "Properties") free and clear of all monetary liens, claims and encumbrances (collectively, the "Liens"), with such Liens to attach to the proceeds of the Sale to the extent, with the validity and in the same priority that existed prior to the Sale; (b) approving the bidding procedures for the sale of the Properties; and (c) granting the Debtor such other and further relief as this Court deems just and proper (the "Application") (the "Motion"); and after due deliberation and consideration of all the facts and circumstances herein; and upon the Affidavit of Service of the Motion on file with the Court (ECF Doc. No. 145); and an Objection to the Motion having been filed by 1414 Utica Avenue Lender LLC (ECF Doc. No. 137) and a Response Reservation of Rights with Respect to

1

Sale Motion having been filed by Empire State Certified Development Corporation (ECF Doc. No. 139); and a hearing having been held on August 5, 2020 (the "Hearing") and the Court having determined that the relief sought in the Motion is in the best interest of the Debtor's estate and its creditors; and adequate notice having been provided and no other or additional notice being necessary or required; it is hereby

**ORDERED**, that the Motion be and hereby is granted to the extent provided for herein, and any other relief sought in the Motion not granted by this Order shall be considered at the hearing scheduled to approve the results of the Auction to be held by this Court on October 28, 2020 at *2:00 (CEC)* p.m. (the "Sale Hearing") before Hon. ~~Carla E. Craig~~ *Alan S. Trust*, ~~Chief~~ *(CEC)* United States Bankruptcy Judge, Eastern District of New York, telephonically at Dial in Number ~~888-273-3658~~ *888-808-6929 (CEC)*; Access Code ~~2872314~~ *2181522 (CEC)*; and it is further

**ORDERED**, that notice of the Motion given by the Debtor as described in the Motion and the related Affidavit of Service is deemed adequate under the circumstances; and it is further

**ORDERED**, that the Terms and Conditions of Sale, annexed to this Order as **Exhibit "A",** are approved in all respects and the Debtor is authorized under Bankruptcy Code section 363 to sell all of the Debtor's right, title, and interest in and to the Properties at a public auction and pursuant to the relevant terms of the Plan, free and clear of all Liens , with such Liens attaching to the sale proceeds to the extent, with the validity and in the priority that existed prior to the Sale and to the extent previously determined by the Court, and such Liens remaining in place pending closing of the Sale of each of the Properties; and it is further

**ORDERED**, that the Auction shall be conducted telephonically or by

videoconference on October 22, 2020 (the "Sale Date"), or such other adjourned date posted on the website maintained by Rosewood Realty Group, the Debtor's auctioneer, and that the Properties shall be offered for inspection by appointment at reasonable times, requested by the interested party to the Debtor's auctioneer, which will make such arrangements; and it is further

ORDERED, that the Notice of Sale in substantially the form annexed hereto as **"Exhibit B"** is approved in all respects. Within three (3) business days after entry of this Order, the Debtor shall serve a copy of the Notice of Sale by first class mail or e-mail, upon the following notice parties (each a "Notice Party" and collectively, the "Notice Parties"): (i) the Office of the United States Trustee; (ii) counsel to the Debtor's secured creditors; (iii) the Debtor's sole member; (iv) each of the Debtor's creditors and tenants; (v) all other parties having requested notices in the Debtor's bankruptcy case; and it is further

**ORDERED**, that within 48 hours after the conclusion of the Auction, or the execution of a contract of sale with one or more purchasers for the Properties, the Debtor shall file a Sale Declaration with the Court regarding the results of the Auction; and it is further

**ORDERED**, that objections, if any, to that part of the relief sought in the Motion not otherwise approved by this Order, including the Sale of the Properties free and clear of liens, shall be (i) filed with the Bankruptcy Court by October 26, 2020, at 4:00 p.m. electronically by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Suite 1595, Brooklyn, New York 11201-1800 and (ii) upon: (a) attorneys for the Debtor, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel Shafferman, Esq.; and (b) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Rachel Wolf,

Esq.; and it is further

**ORDERED**, that within three (3) business days of the entry of this Order, the Debtor shall serve a copy of this Order by first class mail or e-mail, upon (i) the United States Trustee; (ii) all creditors listed on the Debtor's bankruptcy petition and/or that have filed proofs of claim in the Debtor's case; (iii) all parties having requested notices in the Debtor's case; and (iv) all appropriate taxing authorities, and file an affidavit evidencing service no later than the filing of the Sale Declaration; and it is further

**ORDERED**, that the Debtor shall have the right to cancel or adjourn the Auction in the event that a plan is confirmed in this case providing for a refinancing of the Debtor's secured creditors prior to the date of the Auction.



**Dated: Brooklyn, New York**
**August 25, 2020**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**

**EXHIBIT "A"**

**BIDDING PROCEDURES AND TERMS AND CONDITIONS OF SALE**

The following bid procedures and terms and conditions of sale (the "Bidding Procedures"), which were approved by an order for the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") dated August  , 2020, shall govern the Auction and Sale of the real properties of Cort & Medas Associates, LLC, the debtor and debtor in possession (the "Debtor") commonly known as and located at 1376 and 1414 Utica Avenue, Brooklyn, New York 11203 (Block: 4784, Lots: 20 & 35) (the "Properties"), which is property of the Debtor's estate on or prior to Confirmation, as described in its *Second Amended Plan of Reorganization of Cort & Medas, LLC, as Modified* dated August 13, 2020 (the "Plan), and *Second Amended Disclosure Statement for Second Amended Plan of Reorganization of Cort & Medas, LLC, as Modified* dated August 20, 2020 (the "Disclosure Statement").  The Debtor will seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Properties free and clear of liens, claims, encumbrances, and interests, to the Successful Bidder (as defined in the Plan and Disclosure Statement) as may be made at the Auction (as defined below).

A. Approvals. The proposed sale shall in all respects be subject to approval by the Bankruptcy Court and in compliance with (i) the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"), (ii) the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iii) other applicable rules and law.

B. Assets to be Sold. The assets to be sold shall consist of the Properties, which shall be sold as one lot as deemed advisable by Rosewood Realty Group (the "Broker"), retained by the Debtor pursuant to Order of the Bankruptcy Court entered on February 6, 2020 [ECF Doc #96], and such sale shall be free and clear of liens, claims, encumbrances and interests (collectively, the "Liens"), with such Liens to attach to the proceeds of the sale to the same extent, validity and priority that existed prior to the sale, and such Liens remaining in place pending closing of the sale of each of the Properties.

C. Sale As Is, Where Is. Each Property shall be sold as is, where is, without any representation or warranty of any type whatsoever.  The Properties may be sold with or without the current tenants at the Properties.  The current monthly rent generated by the tenants is $43,468.00

D. <u>Stalking Horse Bidder</u>. At any time prior to the Auction, the Debtor, with reasonable consent of its secured creditors, may select a Bidder to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and enter into a purchase agreement with such Stalking Horse Bidder (the "Stalking Horse Agreement") for a purchase price of not less than $2,000,000.00, which shall be subject to higher and better offers at the Auction, to establish the minimum bid for the Properties at the Auction. The Debtor also reserves the right, with reasonable consent of its secured creditors, and subject to its rights under 11 U.S.C. § 363(f), to (i) provide a breakup fee (the "Breakup Fee") of a maximum amount of three percent (3%) of the proposed purchase price under such Stalking Horse Agreement payable to the Stalking Horse Bidder from the proceeds of the Sale, and (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses not to exceed $25,000 (the "Expense Reimbursement" and with the Breakup Fee, collectively, the "Bid Protections") to the extent the Debtor and Broker determine, in their sole discretion and as a matter of its reasonable business judgment, that provision of such Bid Protections is likely to maximize the value of the Properties. The Stalking Horse Bidder will be entitled to the Bid Protections only upon the consummation of an alternative transaction wherein the Stalking Horse Bidder is NOT the successful bidder, and payable solely from the proceeds of such transaction. If the Debtor selects a Stalking Horse Bidder, the opening bid for the Properties at the Auction (the "Initial Bid") shall be equal to the purchase price agreed to by the Stalking Horse Bidder plus the amount of any Bid Protections as set forth in the Stalking Horse Agreement (collectively, the "Initial Stalking Horse Bid Amount").

E. <u>Buyer's Premium</u>. At closing, in addition to payment of the purchase price to the Debtor, the Successful Bidder must also pay to the Broker a buyer's premium in an amount equal to 6% of the purchase price (the "Buyer's Premium").

F. <u>Qualification of Bidders</u>. If the Auction is conducted without a Stalking Horse Bidder, any potential bidder, other than the Debtor, who wishes to submit a bid with respect to the Properties must demonstrate to the satisfaction of the Debtor that such potential bidder is a "Qualified Bidder." A Qualified Bidder is a potential bidder who delivers to the Broker a written and signed, binding offer **on or before the Bid Deadline** (as defined below) that:

(i)         is a bid for the Properties in its entirety for a cash price equal to or greater than **$2,000,000 (the "Minimum Bid")**.

(ii)        states the bidder's offer is irrevocable, and not contingent on obtaining financing or any due diligence until the closing of the purchase of the Properties if such bidder is the Successful Bidder;

(iii)      states the bidder's agreement to pay to the 6% Buyer's Premium;

(iv)      does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

(v)        fully discloses the identity of each entity that will be bidding for the Properties (the "Potential Bidder") or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including, if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Potential Bidder's address, telephone number and email address where the bidder may be contacted;

(vi)      is accompanied by evidence that a good faith deposit in the amount of $200,000 (the "Good Faith Deposit"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to Shafferman & Feldman LLP, as escrow agent (the "Escrow Agent"), pursuant to wire instructions to be provided by the Debtor, and acknowledges that the Good Faith Deposit shall be held by the Escrow Agent in a non-interest bearing, segregated, account of the Escrow Agent for the Debtor's estate in accordance with the terms hereof;

(vii)     states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(viii)    is accompanied by financial information satisfactory to the Debtor which fairly and reasonably demonstrates the Potential Bidder's ability (and the sources of the Potential Bidder's ability) to close on its purchase of the Properties if the Potential Bidder should be the Successful Bidder (as hereinafter defined), in an amount at least as much as its bid as necessary to consummate the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix)      includes an executed original of these Bid Procedures acknowledging and agreeing to these Bid Procedures and all the terms thereof, including the following:

1. the Potential Bidder is not a partner, officer, director, stockholder, agent, employee or insider of the Debtor, the Debtor's principals, the Broker, the Debtor, Debtor's principals or any relative of any of the foregoing, unless waived in writing by the Debtor prior to the Bid Deadline;

2. the Potential Bidder relied solely on its own independent investigation, analysis, appraisal and evaluation of the Properties and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Properties and waives any and all claims against Debtor and Broker; and

3. the Potential Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected; and

4. Each Bidder must submit an opening bid in an amount equal to or greater than the Minimum Bid. The first bid made over the Minimum Bid must be in the amount of $60,000 if there is a Stalking Horse Bidder and thereafter if there is no Stalking Horse Bidder, Qualified Bidders may submit successive bids higher than the previous bid in increments of no less than $25,000. The Debtor and Rosewood reserve the right to alter the incremental bid amount at any time during the Auction; and

5. the Potential Bidder's offer shall not be binding prior to the time that the Auction is conducted and the sale of the Properties approved by the Bankruptcy Court; and

6. if the Potential Bidder is the Successful Bidder, it shall, within two (2) business days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of (i) the final bid at the Auction, plus (ii) the 6% Buyer's Premium, within 48 hours of the Auction, with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT; and

7. if the Potential Bidder is the Successful Bidder, it shall close on the purchase of the Properties within twenty-one (21) days after entry by the Bankruptcy Court of an order approving the sale of the Properties (the "Sale Order"), or on such other date as the Seller and the Successful Bidder shall otherwise agree to in writing, or as may otherwise be directed by Bankruptcy Court order (such date, the "Closing Date"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE

PURCHASE PRICE AT THE CLOSING; and

(x) includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of a PSA; and

(xi) contains other information reasonably requested by the Debtor and/or the Broker.

A competing bid meeting the above requirements shall constitute a "Qualified Bid". The Broker shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be qualified by no later than October 20, 2020, at 5:00 p.m. (prevailing Eastern Time).

G. <u>Deposit Increase</u>. Subject only to Section (E) hereinabove, if the Potential Bidder becomes the Successful Bidder, it shall, within two (2) business days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of (i) the final bid at the Auction, plus (ii) the 6% Buyer's Premium, within 48 hours of the Auction, TIME BEING OF THE ESSENCE.

H. <u>Closing Deadline</u>. If the Potential Bidder is the Successful Bidder, it shall close on the purchase of the Properties within twenty-one (21) days after entry by the Bankruptcy Court of an order approving the sale of the Properties (the "<u>Sale Order</u>"), or on such other date as the Debtor and the Successful Bidder shall otherwise agree to in writing, or as may otherwise be directed by Order of the Bankruptcy Court (such date, the "<u>Closing Date</u>"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.

I. <u>Secured Creditors as Qualified Bidders</u>. Notwithstanding anything herein to the contrary:

(1) 1414 Utica Avenue Lender ("1414 Lender") is a Qualified Bidder and has the right (but does not have to exercise the right) to make an initial credit bid for the Properties of up to $1,590,760.79 on account of its claim for principal and non-default rate interest without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder, and paying all other senior liens, claims and encumbrances ("1414

Lender's Initial Credit Bid"); 1414 Lender shall also have the right (but does not have to exercise the right) to make a further credit bid for the Properties in the amount of $569,204.10, for a total credit bid of $2,159,964.89, subject to it paying Empire State Certified Development Corporation ("ESCDC") in full on account of its claim in the estimated amount of $733,163.40 and paying all other senior liens, claims and encumbrances ("1414 Lender's Total Credit Bid"); and

(2) ESCDC is a Qualified Bidder and has the right (but does not have to exercise the right), to make a credit bid up to $733,163.40, for the Properties without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder, subject to its paying 1414 Lender the sum of $1,590,760.79 ("ESCDC's Credit Bid") and paying all other senior liens, claims and encumbrances; and

(3) Subject to approval of the Bankruptcy Court, the Debtor and the Broker shall have the sole discretion to accept a joint credit bid of 1414 Lender and ESCDC.

J. Bid Deadline. **All Qualified Bids must be submitted by no later than October 20, 2020 at 5p.m. (ET) (the "Bid Deadline").** Prior to the Bid Deadline, Qualified Bidders shall deliver written copies of their written and signed, binding offer along with all required deliverables to the Broker by transmitting same to The Rosewood Realty Group, 38 E 29th Street, 5th floor, New York, NY 10016, Attn: Greg Corbin Greg@Rosewoodrg.com.

(i) Auction. In the event that the Debtor and Broker receive by the Bid Deadline one or more bids that it deems in their discretion to constitute Qualified Bids (other than by the Debtor), the Broker shall conduct an auction with respect to the Properties (the "Auction"). The Auction shall take place telephonically or by videoconference on **October 22, 2020, at 11:00 a.m. (ET)** (the "**Auction Time**") or such other time as the Broker shall notify all Qualified Bidders, the Debtor, and other invitees via e-mail or facsimile not later than one (1) business day before the Auction Time (or re-scheduled Auction Time, as applicable). If, however, only one Qualified Bid is received by the Bid Deadline, then the Auction will not be held, and Broker shall so notify the Debtor no later than one (1) business day after the Bid Deadline and the Debtor shall proceed to seek approval of the sale. The Auction shall be governed by the following procedures:

(i) Only authorized representatives and respective counsel of each of the Qualified Bidders, the Debtor, 1414 Lender, ESCDC, and the Broker

6

|      | shall be permitted to attend and participate at the Auction, unless otherwise agreed to by the Debtor and the Broker in their sole discretion; |
|------|---|
| (ii)  | Only the Debtor and other Qualified Bidders shall be entitled to make any subsequent bids at the Auction; |
| (iii) | The Debtor and each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale; |
| (iv)  | Bidding shall commence at the amount of the highest and best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline; |
| (v)   | The Broker shall have the exclusive right to set the bidding increments; |
| (vi)  | The Debtor and other Qualified Bidders shall participate in person at the Auction (or through a method designated by Broker), through a duly authorized representative with authority to bind the entity; |
| (vii) | The Auction will be conducted so that the Debtor and each Qualified Bidder will be informed of the previous bid; |
| (viii)| The Auction shall continue until there is only one final offer for the Properties (either in groups or all together) that the Broker determines, subject to Bankruptcy Court approval, is the highest and best offer submitted at the Auction from among the Qualified Bidders and the Debtor (the "Successful Bid"). The bidder submitting each such Successful Bid shall become a "Successful Bidder" and shall have such rights and responsibilities set forth herein and in the Plan; |
| (ix)  | At the end of the Auction, the Broker shall also announce the next highest and otherwise best offer(s) after the Successful Bid (the "Next Highest Bid(s)," and the Qualified Bidder that submitted such bid, the "Next Highest Bidder(s)"). |
| (x)   | The Debtor reserves the right to seek approval of the Next Highest Bid(s) as a back–up bid and may seek approval at the Sale Hearing to close the Sale to the Next Highest Bidder(s) if the Successful Bidder(s) fails to close for any reason; |
| (xi)  | if the Next Highest Bidder(s) is determined by the Broker to have submitted the Next Highest Bid(s), or next best bid (the "Next Best Bid(s)") at the Auction, it will be considered a back-up bid (the "Backup Bid(s)") and, the Next Highest Bidder(s), therefore, to be designated the back-up bidder (the "Back-up Bidder(s)"), who shall be notified in writing that the Debtor has determined to proceed with the Back-up Bid(s) after default by the Successful Bidder(s), the Potential Bidder(s) |

7

        shall close on the purchase of the Properties on the Back-up Closing Date (as hereinafter defined), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE AND TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE BACK-UP CLOSING DATE;

(xii)    if (a) a Qualified Bidder is a Successful Bidder, the Deposit shall become non-refundable and shall be forfeited by such Successful Bidder as liquidated damages in the event such Successful Bidder shall fail to close the purchase of the Properties on the Closing Date, and (b) if the Back-up Bidder(s) and the Broker determine to proceed with the Back-up Bid(s) after default by the Successful Bidder(s), the Deposit of such Back-up Bidder(s) shall become non-refundable and shall be forfeited by such Back-up Bidder(s) as liquidated damages if the Back-up Bidder(s) shall fail to close the purchase of the Properties on the Backup Closing Date(s).

(xiii)    If more than one Qualified Bidder(s) submits a bid in excess of the Bid deemed submitted by the Debtor, after selection of the Successful Bidder(s), then the Broker shall determine which bid constitutes the Back- up Bid(s).

(xiv)    The Successful Bidder must pay the balance of the Purchase Price for the Assets to the Debtor by wire transfer to an attorney escrow account designated by the Debtor in immediately available federal funds. The Successful Bidder must close title to the Properties at a date that is no later than the Closing Deadline, **TIME BEING OF THE ESSENCE** as to the Successful Bidder, although such date may be extended solely by the Debtor in consultation with all of its secured creditors. Notwithstanding the foregoing, the Debtor shall grant the Successful Bidder a single thirty (30-day) extension (the "**Extension**"), at the request of the Successful Bidder, provided the Successful Bidder posts an additional, non-refundable deposit equal to ten percent (10%) of the Purchase Price (the "**Extension Deposit**"), for an aggregate non-refundable deposit equal to twenty percent (20%) of the Purchase Price, prior to the Closing Deadline (the "**Total Deposit**"). The Extension Deposit shall be made by wire transfer to an attorney escrow account designated by the Debtor in immediately available federal funds, and together with the Additional Deposit, shall be deemed, collectively, the "**Deposit**." If the Successful Bidder elects to exercise the Extension, the Closing shall take place on or before the thirtieth (30th) day following the Closing Deadline, **TIME BEING OF THE ESSENCE** as to the Successful Bidder. If the Successful Bidder elects to exercise the Extension, the Successful Bidder shall be responsible for all real estate taxes, costs, fees, and expenses incurred by the Estate after the original Closing Deadline through the date of the actual Closing. The Successful Bidder shall also be responsible for any additional interest, fees, and other amounts incurred by the Lender

      and any other party asserting a lien against the Real Property from the day after the Closing Deadline through the date of the actual Closing.

(xv)   Closing on Back-up Bid. If for any reason the Successful Bidder shall fail to timely close the sale of the Properties, and the Debtor determines to proceed with the Back-up Bid(s), the Back-up Bidder(s) shall close on the purchase of the Properties and pay the amount of the Back-up Bid(s), less its Deposit previously posted, on the later of the Closing Date and twenty-one (21) business days after written notice of the Successful Bidder's default in closing (the "Back-up Closing Date"), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING. If the Debtor proceeds with the Back-up Bid(s), then the Back-up Bidder(s) shall be obligated to close title to the Properties and there shall be no contingency of any kind or nature that will permit the Back-up Bidder(s) not to proceed on the Back- up Closing Date other than the inability of the Debtor to deliver title to the Properties. In the event the Back-up Bidder(s) shall be obliged, but shall fail, to timely close the purchase of the Properties, the Back-up Bidder(s) shall be in default, and the Back-up Bidder(s) shall forfeit its Deposit. Notwithstanding the foregoing, the Purchaser shall have the right, but not the obligation, to extend the Back-up Closing Date up to an additional ten (10) business days (the "Adjourned Back-up Closing Period"), with TIME BEING OF THE ESSENCE as to the Back-up Bidder's obligation to close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder(s) shall fail to close the purchase of the Properties prior to expiration of the Adjourned Back-up Closing Period, the Backup Bidder(s) shall be in default and the Back-up Bidder(s) shall forfeit its Deposit.

    K.   Sale Hearing. A hearing to consider approval of the sale of the Properties to the Successful Bidder will be held before the Honorable ~~Carla E. Craig~~ ***Alan S. Trust***, ~~Chief~~ *(CEC)* United States Bankruptcy Judge, telephonically at Dial in Number ~~888-273-3658~~ ***888-808-6929 (CEC)***; Access Code ~~2872314~~ ***2181522 (CEC)***; on October 28, 2020 at ***2:00 (CEC)*** pm, or at such other time as counsel may be heard.

    L.   Return of Deposit. Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within three (3) business days after the date on which the Bankruptcy Court enters an order approving the sale of the Properties to the Successful Bidder or otherwise concludes the Sale Hearing without adjournment. The

9

        Deposit of the Successful Bidder shall be held until the closing of the sale of the Properties and applied in accordance with the Successful Bid. The Deposit of the Back-Up Bidder shall be returned within three (3) business days after the Successful Bidder closes on the sale of the property.

M.    <u>Consent to Bankruptcy Court Jurisdiction.</u> The Bankruptcy Court shall retain jurisdiction to determine any disputes concerning the Auction of the Assets. By participating in the Auction, all Bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

**MEMORANDUM OF SALE – SUCCESSFUL BIDDERS**

**Purchase Price:** _____

The undersigned has this ___ day of _____ 2020, agreed to purchase the real properties located at 1376 and 1414 Utica Avenue, Brooklyn, New York 11203 (Block: 4784, Lots: 20 & 35) (the "Properties") and sold by the Debtor pursuant to the Order of the United States Bankruptcy Court for the Eastern District of New York, entered on _____ 2020, authorizing the sale of the Properties, for the sum of $_____ DOLLARS and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of the Properties and this Memorandum of Sale.

_____
SUCCESSFUL BIDDER (Signature)

_____
PRINT NAME

_____
ADDRESS

_____
ADDRESS (City, State, Zip)

_____
TELEPHONE NUMBER

_____
EMAIL ADDRESS

Received from _____ the sum of $_____ DOLLARS, as a non-

refundable deposit for the purchase of the Properties pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price in the above sale was for the sum of
$_____.

_____
[SALES AGENT]

**SUCCESSFUL BIDDER ATTORNEY INFORMATION**

Name _____

Address _____

Phone _____

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                   Chapter 11

CORT & MEDAS ASSOCIATES, LLC,                            Case No. 19-41313 (CEC)

                                       Debtor.
---------------------------------------------------------x

**NOTICE TO CREDITORS AND OTHER PARTIES IN INTEREST OF
SALE FOR THE REAL PROPERTIES KNOWN AS AND LOCATED AT
1376 and 1414 UTICA AVENUE, BROOKLYN, NEW YORK 11203**

      **PLEASE TAKE NOTICE** that, on March 6, 2020 ("**Petition Date**"), Cort & Medas Associates, LLC (the "**Debtor**") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**").

      **PLEASE TAKE FURTHER NOTICE** that, by Order entered on February 6, 2020, the Bankruptcy Court approved the retention Rosewood Realty Group as real estate broker (the "**Broker**") to sell the Debtor's real properties known as and located at 1376 and 1414 Utica Avenue, Brooklyn, New York 11203 (Block: 4784, Lots: 20 & 35) (the "Properties").

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to an Order entered on August__, 2020 ("**Sale Procedure Order**"), the Bankruptcy Court authorized the Debtor to sell the Properties.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Bankruptcy Code §§ 363(b) and (f), Bankruptcy Rule 6004, Local Bankruptcy Rule 6004-1 and the Sale Procedure Order, the Assets will be sold free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the net proceeds of sale payable to the Debtor's estate pursuant to the Sale Procedure Order.

      **PLEASE TAKE FURTHER NOTICE** that the Properties are being sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such Properties.

      **PLEASE TAKE FURTHER NOTICE** that, the Auction, if held, shall be conducted telephonically or by videoconference October 22, 2020 at 11:00 a.m. (prevailing Eastern Time), or at such later time as may be determined in the Debtor's discretion.

**PLEASE TAKE FURTHER NOTICE** that any entity wishing to place a bid for the Properties shall be subject to the following terms as set forth in the Terms and Conditions of Sale/Bidding Procedures Order, a copy of which is attached hereto as Exhibit "A":

**PLEASE TAKE NOTICE**, that the Debtor will seek Court approval of the Auction Sale at a hearing to be held on October 28, 2020 at *2:00 (CEC)* p.m. at hearing to be held the Honorable ~~Carla E. Craig~~ *Alan S. Trust*, ~~Chief~~ *(CEC)* United States Bankruptcy Judge for the Eastern District of New York to be conducted telephonically at Dial in Number ~~888-273-3658~~ *888-808-6929 (CEC)*; Access Code ~~2872314~~ *2181522 (CEC)* (the "Sale Hearing"). At the Sale Hearing, the Debtor shall present the results of the Auction to the Court and seek approval for the Successful Bid and any Backup Bid.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to that part of the relief sought in the Motion not otherwise approved by this Order, including the Sale of the Properties free and clear of liens, shall be (i) filed with the Bankruptcy Court by October 26, 2020, at 4:00 p.m. electronically by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Suite 1595, Brooklyn, New York 11201-1800 and (ii) upon: (a) attorneys for the Debtor, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel Shafferman, Esq.; (b) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Rachel Wolf, Esq.

**PLEASE TAKE FURTHER NOTICE** that that the failure to file an objection prior to the Sale Objection Deadline shall forever bar, preclude and disqualify you from asserting an objection to the Motion at the Sale Hearing or to the Bankruptcy Court's entry of findings and rulings sought therein.

**PLEASE TAKE FURTHER NOTICE** that requests for information about the Properties can be obtained by contacting counsel to the Debtor, Shafferman & Feldman, Attn: Joel Shafferman, Esq., at (212) 509-1802, joel@shafeldlaw.com, or Rosewood Realty Group, Attn: Greg Corbin at (212)359-9900, greg@rosewoodrg.com.

Dated: New York, New York
August  , 2020

**BY ORDER OF THE COURT**
Shafferman & Feldman LLP
Counsel to the Debtor
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802