UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  | : |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CORT & MEDAS ASSOCIATES, LLC, | : | Case No.: 19-41313 (JMM) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF AMENDED BID PROCEDURES,
## PUBLIC AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that 1414 Utica Avenue Lender LLC (the "Plan Proponent") and Cort & Medas Associates, LLC (the "Debtor') have been authorized to sell the Debtor's real property and the improvements thereon, located at and commonly known as 1376 and 1414 Utica Avenue, Brooklyn, New York 10203 (Block: 4784, Lots: 20 & 35) (the "Property") pursuant to *1414 Utica Avenue Lender LLC's Amended Plan of Reorganization for Cort & Medas Associates, LLC, as Modified* (the "Plan"), which was confirmed on June 4, 2021.

**PLEASE TAKE FURTHER NOTICE** that the sale of the Property shall be pursuant to an auction (the "Auction") in accordance with the amended bid procedures annexed hereto (the "Bid Procedures").[1]  Pursuant to the Bid Procedures, the Bid Deadline is **July 22, 2021 at 5:00 p.m.**, and the Broker shall notify bidders whether their bids have been determined to be qualified by no later than **July 23, 2021, at 4:00 p.m**.  If the Plan Proponent receives Qualified Bids within the requirements and timeframe specified in the Bid Procedures, then the Plan Proponent will conduct the Auction on **July 26, 2021 commencing at 12:00 p.m.**, by telephone or video conference, or such later time or other place as the Plan Proponent shall timely notify all Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that the Plan Proponent will seek approval of the Sale at a hearing to be held on **July 28, 2021 at 10:30 a.m.**, before the before the Honorable Jil Mazer-Marino, United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, New York, 11201, unless otherwise ordered by the Bankruptcy Court (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Sale may be raised at the Sale Hearing.

---

[1] To the extent not otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Bid Procedures.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

In re:                                :     Chapter 11
                                          :

CORT & MEDAS ASSOCIATES, LLC,     :     Case No.:  19-41313 (JMM)
                                          :

                 Debtor.              :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## BIDDING AND AUCTION PROCEDURES

        These Terms and Conditions of Sale are promulgated in connection with the sale (the "Sale") of the real property and the improvements thereon, located at and commonly known as 1376 and 1414 Utica Avenue, Brooklyn, New York 10203 (Block: 4784, Lots: 20 & 35) (the "Property"). The seller of the Property is Cort & Medas Associates, LLC (the "Debtor'). The sale of the Property shall be conducted pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and *1414 Utica Avenue Lender LLC's Amended Plan of Reorganization for Cort & Medas Associates, LLC* (the "Plan") proposed by 1414 Utica Avenue Lender LLC (the "Plan Proponent").

    A.    Time and Place of Auction.  The sale of the Property shall be pursuant to an auction (the "Auction") held on July 26, 2021 commencing at 12:00 p.m., by telephone or video conference in accordance with procedures to be implemented in the sole discretion of the Plan Proponent in consultation with its professionals, with notice of such procedures given to all interested parties prior to the Auction.  The Plan Proponent may retain Rosewood Realty Group as real estate broker (the "Broker") to market the Property.

    B.    Sale Free and Clear of Liens.  The sale of the Property shall be free and clear of all liens, claims, encumbrances, equities and interests, of any nature or kind, other than permitted encumbrances consented to by the Plan Proponent. In Plan Proponent's sole discretion, the Property may be transferred subject to the Plan Proponent's existing mortgage lien(s) of record; provided however, that if Secured Creditor elects, before the auction, to offer a Qualified Bidder the opportunity to take assignment of its mortgage, then the Plan Proponent must make that opportunity available to all Qualified Bidders.  All liens and encumbrances upon the Property shall remain in effect until the closing of the sale, and at closing shall be transferred to and attach to the net proceeds of the sale in the same priority that existed immediately before the closing and disbursed pursuant to the provisions of the Plan.

    C.    Stalking Horse Bidder.  At any time prior to the Auction, the Plan Proponent, with reasonable consent of the Debtor's secured creditors, may select a bidder to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and enter into a purchase agreement with such Stalking Horse Bidder (the

"Stalking Horse Agreement"), which shall be subject to higher and better offers at the Auction, to establish the minimum bid for the Property at the Auction. The Plan Proponent also reserves the right, with reasonable consent of the Debtor's secured creditors, and subject to 11 U.S.C. § 363(f), to (i) provide a breakup fee (the "Breakup Fee") of a maximum amount of three percent (3%) of the proposed purchase price under such Stalking Horse Agreement payable to the Stalking Horse Bidder from the proceeds of the Sale, and (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses not to exceed $25,000 (the "Expense Reimbursement" and with the Breakup Fee, collectively, the "Bid Protections") to the extent the Plan Proponent determines, in its sole discretion and as a matter of its reasonable business judgment, that provision of such Bid Protections is likely to maximize the value of the Property. The Stalking Horse Bidder will be entitled to the Bid Protections only upon the consummation of an alternative transaction wherein the Stalking Horse Bidder is NOT the Successful Bidder, and payable solely from the proceeds of such transaction. If the Plan Proponent selects a Stalking Horse Bidder, the opening bid for the Property at the Auction (the "Initial Bid") shall be equal to the purchase price agreed to by the Stalking Horse Bidder plus the amount of any Bid Protections as set forth in the Stalking Horse Agreement (collectively, the "Initial Stalking Horse Bid Amount").

D.    <u>Buyer's Premium</u>.  At closing, in addition to payment of the purchase price, the Successful Bidder (as defined below) must also pay to the Broker a buyer's premium in an amount equal to 5% of the purchase price; provided, however, that if the Plan Proponent is the Successful Bidder, at closing, the Plan Proponent shall pay a buyer's premium to the Broker in an amount equal to 2% of the purchase price.

E.    <u>Bid Qualifications</u>.  Any potential bidder, other than the Plan Proponent, who wishes to submit a bid with respect to the Property must demonstrate to the satisfaction of the Plan Proponent that such potential bidder is a "Qualified Bidder." The Plan Proponent is a Qualified Bidder without the need to satisfy the requirements to be a Qualified Bidder otherwise set forth herein. A Qualified Bidder is a potential bidder who delivers to the Plan Proponent and the Broker a written and signed, binding offer **on or before July 22, 2021 at 5:00 p.m.** (the "Bid Deadline") that:

(i)    states that the bidder has entered or will enter into a legally binding purchase and sale agreement ("PSA") for the acquisition of the Property on terms and conditions reasonably acceptable to the Plan Proponent (as determined by the Plan Proponent in its reasonable business judgment);

(ii)    states the bidder's offer is irrevocable, and not contingent until the closing of the purchase of the Property if such bidder is the Successful Bidder (as hereinafter defined);

(iii)    does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

(iv)       does not contain any financing contingencies or any other contingencies;

(v)       fully discloses the identity of each entity that will be bidding for the Property (the "<u>Potential Bidder</u>") or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including, if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Potential Bidder's address, telephone number and email address where the bidder may be contacted;

(vi)       is accompanied by evidence that a good faith deposit in the amount of 10% of the Potential Bidder's bid (the "<u>Bid Deposit</u>"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to Rubin LLC, as escrow agent (the "<u>Escrow Agent</u>"), pursuant to wire instructions to be provided by the Plan Proponent, and acknowledges that the Bid Deposit shall be held by the Escrow Agent in a non-interest bearing, segregated, account of the Escrow Agent for the Debtor's estate in accordance with the terms hereof;

(vii)       states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(viii)       is accompanied by financial information satisfactory to the Plan Proponent which fairly and reasonably demonstrates the Potential Bidder's ability (and the sources of the Potential Bidder's ability) to close on its purchase of the Property if the Potential Bidder should be the Successful Bidder, in an amount at least as much as its bid as necessary to consummate the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix)       includes an executed original of these Terms and Conditions of Sale acknowledging and agreeing to these Terms and Conditions of Sale, including the following:

       (a)       the Potential Bidder is not a partner, officer, director, stockholder, agent, employee or insider of the Debtor, the Debtor's principals, the Broker, the Plan Proponent, the Plan Proponent's principals or any relative of any of the foregoing, unless waived in writing by the Plan Proponent prior to the Bid Deadline;

       (b)       the Potential Bidder relied solely on its own independent investigation, analysis, appraisal and evaluation of the Property and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or

otherwise, with respect to the Property and waives any and all claims against the Plan Proponent and Broker; and

(c)    the Potential Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected;

(d)    the Potential Bidder is financially able to acquire the Property in cash, without contingencies as to financing and/or additional due diligence;

(e)    the Potential Bidder, if it is the Successful Bidder, will complete the Sale in accordance with the timing set forth in these Terms and Conditions of Sale;

(f)    the Potential Bidder, if it is the Successful Bidder, will pay the Broker the buyer's premium at closing;

(g)    the Potential Bidder's offer shall not be binding prior to the time that the Auction is conducted and the Sale of the Property approved by the Bankruptcy Court;

(h)    includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) to purchase the property pursuant to its bid at the Auction; and

(i)    contains other information reasonably requested by the Plan Proponent and/or the Broker.

A competing bid meeting the above requirements shall constitute a "Qualified Bid." The Plan Proponent, in consultation with the Broker, shall make a determination regarding whether a bid is a Qualified Bid and the Broker shall notify bidders whether their bids have been determined to be qualified by no later than July 23, 2021, at 4:00 p.m. (prevailing Eastern Time).

F.    Other Asset Included in Sale.  In addition to the Property, the Sale will also include all right, title, and interest of the Debtor or its estate in any claim or cause of action it may have against any tenant, subtenant, and/or holdover tenant of the Property.

G.    Bidding.  The opening bid at the Auction shall be the amount of the highest and best Qualified Bid, as determined by the Plan Proponent, in consultation with its professionals, with subsequent bids to be made in $25,000.00 increments.  Each bid made by a Qualified Bidder at the Auction must continue to meet, satisfy or comply with the requirements of a Qualified Bid, other than those applicable to the submission of an initial Qualified Bid.

H.   Credit Bid.  The Plan Proponent may, but is not required to, submit an initial credit bid up to $2,140,997.63, or such other amount as may be determined by the Bankruptcy Court before the Auction, for the Property and pay all other senior liens, claims and encumbrances at closing.  The Plan Proponent's initial credit bid amount of up to $2,140,997.63 does not constitute an admission by the Plan Proponent of the amount of its allowed secured claim.

I.   Adjournment and Cancellation of Auction.  The Plan Proponent reserves the right, in its business judgment, to make one or more adjournments to, or cancel, the Auction to, among other things (i) facilitate discussions between the Plan Proponent, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Plan Proponent and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Plan Proponent with such additional documentation or information as the Plan Proponent in its business judgment may require to determine such Qualified Bidder's ability to close the Sale, or (iv) facilitate higher or better bids.

J.   Successful Bidder and Backup Bidder.  At the Auction, once a bidder is determined by the Plan Proponent, in consultation with its professionals, to have made the highest or best offer for the Property (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered.  The bidder with the next highest or best bid submitted at the Auction, as determined by the Plan Proponent, in consultation with its professionals, shall be the "Backup Bidder."  In determining the Successful Bidder and the Backup Bidder, the Plan Proponent may consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction, and the timing thereof, (iv) indicia of good faith on the part of the Qualified Bidder, (v) the terms and conditions of the Qualified Bidder PSA, and (vi) the net benefit to the Debtor's estate.

K.   Successful Bidder Additional Deposit.  Within one business day after the Successful Bidder is determined, the Successful Bidder (except for the Plan Proponent's designee) shall be required to increase the Bid Deposit to an amount equal to ten percent (10%) of the purchase price of the winning bid (the "Purchase Price"), which amount shall serve as a good faith deposit against payment of the Purchase Price, **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT**.  Within two (2) business days after the conclusion of the Auction, the Plan Proponent's counsel will return the Bid Deposits to all other bidders, other than the Backup Bidder (as defined below).

L.   Sale Hearing.  A hearing to consider approval of the Sale of the Property to the successful bidder (the "Sale Hearing") is scheduled to take place on July 28, 2021 at 10:30 a.m., prevailing Eastern Time, or as soon thereafter as counsel may be heard, before the Honorable Jil Mazer-Marino, United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, New York, 11201, or as otherwise ordered by the Bankruptcy Court.

The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket of the Debtor's case.  At the Sale Hearing, the Plan Proponent shall present the Successful Bid to the Bankruptcy Court for approval.

M.  <u>Sale Order</u>.  The sale approval order (the "<u>Sale Order</u>") shall approve the Sale free and clear of all liens, claims, and encumbrances, and in connection therewith, the Sale Order shall contain the following findings of fact and conclusions of law: (i) that the terms of the Sale are fair and reasonable, (ii) that the Sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (iii) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Purchaser, as transferee of the Property, is a good faith Purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) the sale of the Property to the Purchaser was not controlled by an agreement among potential purchasers, and (vi) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code section 363(n).

N.  <u>Closing</u>.  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Bid Deposit as increased by the supplemental deposit in Paragraph J above) to counsel for the Plan Proponent in full in cash at the closing of title to the Property (the "<u>Closing</u>").  The Successful Bidder must close title to the Property at a date mutually acceptable to the Successful Bidder and the Plan Proponent (the "<u>Closing Date</u>") that is no more than twenty-one (21) days after the Sale Order is entered, **TIME BEING OF THE ESSENCE** as to the Successful Bidder, although such date may be extended solely by the Plan Proponent.

O.  <u>Exemption from Transfer Tax</u>.  Under the Plan, to the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan (including an instrument of transfer executed in furtherance of the Sale), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of the Plan.

P.  <u>Damages for Buyer's Failure to Close</u>.  **TIME IS OF THE ESSENCE AS AGAINST THE SUCCESSFUL BIDDER AND THE FAILURE OF THE SUCCESSFUL BIDDER TO EITHER TIMELY PAY THE ADDITIONAL BID DEPOSIT OR TIMELY CLOSE FOR ANY REASON WHATSOEVER (EXCEPT AS OTHERWISE PROVIDED BELOW), INCLUDING ITS FAILURE TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE, WILL RESULT IN THE PLAN PROPONENT RETAINING THE DEPOSIT AS LIQUIDATED DAMAGES AND THE TERMINATION OF THE SUCCESSFUL BIDDER'S RIGHT TO ACQUIRE**

**THE PROPERTY.**  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the inability to deliver a bargain and sale deed without covenants against grantor's acts to the Property.  Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Plan Proponent or the Plan Proponent's professionals be responsible for, or pay, such expenses.

Q.    Backup Bidder.  In the event that the Successful Bidder fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Plan Proponent, at its sole option, shall be authorized to sell the Property to the Backup Bidder without any further notice, and without giving credit for the deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Plan Proponent deems appropriate.  Should the Backup Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Plan Proponent to the Backup Bidder, the Proponent shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Backup Bidder must close within thirty (30) days of notification that its bid is accepted, **TIME BEING OF THE ESSENCE** as to the Backup Bidder.

R.    As Is Sale.  The Property is being sold free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.  By delivering its respective Bid Deposit, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid.  Neither the Plan Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, the Plan Proponent or their professionals.

S.      Deed.  The Debtor, or the Plan Proponent acting on the Debtor's behalf, shall convey the Property by delivery of a bargain and sale deed without covenants against grantor's acts.

T.      Auctioneer.  JP&R Advertising Agency, Inc. will serve as auctioneer to conduct the Auction, if held.

U.      Seller's Failure to Close.  If the Debtor, or the Plan Proponent on the Debtor's behalf, is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to approve the sale of the Property pursuant, the Plan Proponent's only obligation will be to refund the Bid Deposit to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Plan Proponent, the Debtor or their respective professionals.

V.      Right to Withdraw Sale.  The Plan Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Plan Proponent deems necessary or appropriate.

W.      Proponent's Designee.  Notwithstanding anything to the contrary herein, the Plan Proponent shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Bid Deposit or complying with the other requirements otherwise necessary to bid, and, if the Plan Proponent is the Successful Bidder, shall be entitled to purchase the Property subject to some or all of the Plan Proponent's mortgage.

X.      Bankruptcy Court Jurisdiction.  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending chapter 11 case.

Y.      Reservation of Rights.  The Plan Proponent is authorized to amend and modify these Terms and Conditions of Sale to impose additional terms and conditions on the proposed Auction and Sale of the Property, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Plan Proponent's reasonable judgment, such modifications would be in the best interest of maximizing value from the Sale and promote an open and fair Auction and Sale process, and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of these Terms and Conditions of Sale.

I have read these Terms and Conditions and agree to be bound by them. (**Please  print clearly**)

Date:             _____

Bidder:          _____

Signature:      _____

Title:             _____

Address:        _____

E-Mail:          _____

Phone No.:     _____

Attorney Info: _____