## PURCHASE AND SALE AGREEMENT

By and Between

1414 UTICA AVENUE LENDER LLC, solely in its capacity as
the Plan Proponent of 1414 Utica Avenue Lender's Amended Plan of Reorganization
for CORT & MEDAS ASSOCIATES, LLC, as Debtor
as Seller

and

CALMARK EQUITIES CORP. OR AN ENTITY OWNED OR CONTROLLED BY ITS
PRINCIPAL, MARK KOPLOWITZ,
as Purchaser

Dated as of: July 23, 2021

Property:

1414 Utica Avenue,
Brooklyn, New York

and

1376 Utica Avenue
Brooklyn, New York

## TABLE OF CONTENTS

PAGE

ARTICLE 1  DEFINITIONS.................................................................................................2

ARTICLE 2  GENERAL TERMS.........................................................................................2

    SECTION 2.1.  The Transaction........................................................................................2

    SECTION 2.2.  Purchase Price. .........................................................................................3

ARTICLE 3  PERMITTED EXCEPTIONS; TITLE INSURANCE.....................................4

    SECTION 3.1.  Sale Subject to..........................................................................................4

    SECTION 3.2.  Title Evidence ..........................................................................................4

    SECTION 3.3.  Permitted Exceptions ...............................................................................5

ARTICLE 4  APPORTIONMENTS AND PAYMENTS .....................................................7

    SECTION 4.1.  Apportionments Relating to the Property ................................................7

    SECTION 4.2.  Taxes and Assessments............................................................................7

    SECTION 4.3.  Transfer of Utilities..................................................................................8

    SECTION 4.4.  Transfer Taxes..........................................................................................8

    SECTION 4.5.  Tax Returns ..............................................................................................9

    SECTION 4.6.  Title Charges.............................................................................................9

    SECTION 4.7.  Transaction Expenses...............................................................................9

    SECTION 4.8.  Survival .....................................................................................................9

ARTICLE 5  COVENANTS REGARDING THE PROPERTY............................................9

    SECTION 5.1.  Maintenance and Operation of the Property ............................................9

ARTICLE 6  REPRESENTATIONS AND WARRANTIES OF PURCHASER .................10

    SECTION 6.1.  Generally.................................................................................................10

    SECTION 6.2.  Closing Conditions; Survival of Representations and Warranties...........11

ARTICLE 7  REPRESENTATIONS AND WARRANTIES OF SELLER ...................................12

    SECTION 7.1.  Generally ..........................................................................................12

    SECTION 7.2.  Property Representations ...................................................................12

    SECTION 7.3.  Closing Conditions; Survival of Representations and Warranties...........13

    SECTION 7.4.  Knowledge of Seller...........................................................................13

ARTICLE 8  CLOSING DATE..........................................................................................13

    SECTION 8.1.  Closing Date......................................................................................13

ARTICLE 9  CLOSING DOCUMENTS .............................................................................14

    SECTION 9.1.  Closing. .............................................................................................14

    SECTION 9.2.  Further Assurances............................................................................14

ARTICLE 10  NOTICES...................................................................................................14

    SECTION 10.1.  Notices .............................................................................................14

ARTICLE 11  BROKER ...................................................................................................15

ARTICLE 12  DEFAULTS; REMEDIES ...........................................................................15

    SECTION 12.1.  Purchaser's Default ..........................................................................15

    SECTION 12.2.  Seller's Default ................................................................................16

ARTICLE 13  CASUALTY; CONDEMNATION..................................................................16

    SECTION 13.1.  Casualty...........................................................................................16

    SECTION 13.2.  Condemnation ..................................................................................17

ARTICLE 14  AS-IS; WHERE-IS; DISCLAIMER; WAIVER OF CLAIMS .............................17

    SECTION 14.1.  Disclaimers; As-Is, Where-Is Condition.............................................17

    SECTION 14.2.  Acceptance of Closing Documents; Waivers.........................................19

    SECTION 14.3.  Survival ............................................................................................20

ARTICLE 15  INTENTIONALLY OMITTED ........................................................................20

ARTICLE 16  ESCROW .................................................................................................21

SECTION 16.1.  Escrow Terms .................................................................................21

ARTICLE 17  BANKRUPTCY COURT MATTERS ....................................................21

SECTION 17.1.  Competing Transaction. ................................................................21

SECTION 17.2.  PURCHASER BREAK UP FEE. ...................................................21

SECTION 17.3.  Bankruptcy Court Filings...............................................................21

SECTION 17.4.  Notice of Sale................................................................................21

ARTICLE 18  MISCELLANEOUS ...............................................................................22

SECTION 18.1.  Entire Agreement ..........................................................................22

SECTION 18.2.  Modification....................................................................................22

SECTION 18.3.  Binding Agreement ........................................................................22

SECTION 18.4.  Assignment....................................................................................22

SECTION 18.5.  Illegality .........................................................................................22

SECTION 18.6.  Choice of Law................................................................................22

SECTION 18.7.  Construction...................................................................................23

SECTION 18.8.  Binding Effect; Assignment; Successors and Assigns...................23

SECTION 18.9.  Ambiguities....................................................................................23

SECTION 18.10.  Expenses......................................................................................23

SECTION 18.11.  Counterparts ................................................................................24

SECTION 18.12.  Waiver of Trial by Jury .................................................................24

SECTION 18.13.  Third Party Beneficiaries .............................................................24

SECTION 18.14.  Jurisdiction...................................................................................24

SECTION 18.15.  No Recording ...............................................................................24

SECTION 18.16.  Not an Offer .................................................................................24

SECTION 18.17.  Failure of Deposit...................................................................................25

SECTION 18.18.  No Waiver.............................................................................................25

SECTION 18.19.  Severability ...........................................................................................25

SECTION 18.20.  No Survival ...........................................................................................25

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "**Agreement**") is entered into by and between 1414 UTICA AVENUE LENDER LLC ("**Plan Proponent**"), solely in its capacity as the Plan Proponent of 1414 Utica Avenue Lender's Amended Plan of Reorganization for CORT & MEDAS ASSOCIATES, LLC, as debtor, ("**Seller**") and CALMARK EQUITIES CORP. OR AN ENTITY OWNED, OR, CONTROLLED BY ITS PRINCIPAL, MARK KOPLOWITZ ("**Purchaser**") as of the ___ day of July, 2021.

**WHEREAS**, Cort & Medas Associates, LLC ("**Debtor**"), is a debtor under title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 6, 2019 (the "**Petition Date**"), in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**") (Case No. 19-41313 (JMM) (the "**Bankruptcy Case**");

**WHEREAS**, Debtor is the owner of the Property (as hereinafter defined); and

**WHEREAS**, **Plan Proponent**, filed with the Bankruptcy Court 1414 Utica Avenue Lender LLC's Amended Plan of Reorganization for Cort & Medas Associates LLC, as amended dated April 11, 2021 (the "**Confirmed Plan**"); and

**WHEREAS**, on June 3, 2021, the Bankruptcy Court entered an Order Confirming Plan Proponent's Amended Plan of Reorganization for Cort & Medas Associates, LLC, as Modified (the "**Confirmation Order**"); and

**WHEREAS**, the Confirmed Plan contemplates the sale of the Property to the successful bidder who submits the highest and best offer for the Property as may be approved by the Bankruptcy Court at a hearing that is currently scheduled to take place on July 28, 2021 (the "**Sale Hearing**"); and

**WHEREAS**, the Confirmation Order includes the following general authorization: "Pursuant to section 1142(b) of the Bankruptcy Code, the Plan Proponent, the Disbursing Agent, and/or the Debtor (or Reorganized Debtor, as applicable) are authorized, empowered and directed to (a) execute and deliver any instrument, agreement or document and (b) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and consummation of the Plan, and is authorized, empowered and directed, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents (including without limitation, deeds and accompanying transfer documents as may be required by recording officers and/or a title insurance company) created in connection with the Plan"; and

**WHEREAS**, the Bidding and Auction Procedures related to the Confirmed Plan that have been filed with the Bankruptcy Court (the "**Bid Procedures**") (copy attached as Exhibit "1") include the following provision: "At any time prior to the Auction, the Plan Proponent, with reasonable consent of the Debtor's secured creditors, may select a bidder to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and enter into a purchase agreement with such Stalking Horse Bidder (the "Stalking Horse Agreement"), which shall be

subject to higher and better offers at the Auction, to establish the minimum bid for the Property at the Auction; and

**WHEREAS**, Plan Proponent has selected Purchaser to be the Stalking Horse Purchaser pursuant to the Bid Procedures and will recommend to Debtor's other secured creditors approval of Purchaser as such;

**WHEREAS**, subject to and contingent upon the approval of the Bankruptcy Court, Seller desires to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and assume from Seller pursuant to, *inter alia*, Sections 105 and 363 of the Bankruptcy Code, the Confirmed Plan, and an order of the Bankruptcy Court anticipated to be entered by the Bankruptcy Court following the Sale Hearing (the "**Sale Order**"), the Property and the Landlord Claims (as that term is defined in the Confirmed Plan), all as more specifically provided herein; and

**WHEREAS**, Seller is entering into this Agreement on behalf of Debtor, and in no other capacity, in accordance with the terms of the Confirmed Plan, the Confirmation Order, the Bid Procedures, and subject to and contingent upon approval of the Bankruptcy Court, which approval will be sought from the Bankruptcy Court at the Sale Hearing.

**NOW, THEREFORE**, subject to the terms and conditions of this Agreement, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, including the mutual covenants and agreements set forth herein, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## DEFINITIONS

For purposes of this Agreement, all capitalized terms and certain other terms used herein shall have the respective meanings specified in Schedule I attached hereto and made a part hereof.

## ARTICLE 2
## GENERAL TERMS

### SECTION 2.1.    The Transaction.

2.1.1. Subject to the terms and conditions of this Agreement, the Bid Procedures and the entry of a Sale Order and pursuant to Section 363(b) of the Bankruptcy Code and the Confirmed Plan, Seller agrees to sell, transfer, convey and assign to Purchaser, and Purchaser agrees to purchase and accept from Seller on the Closing Date (as defined herein), free and clear of all liens, claims, encumbrances and interests, subject only to Permitted Exceptions, and any other interest to the extent acceptable to Purchaser, all of Debtor's right, title and interest, in and to (i) that certain real property as more particularly described on Schedule II attached hereto and made a part hereof together with the buildings and improvements thereon (the "**Improvements**") located at and commonly known as 1414 Utica Avenue and 1376 Utica Avenue, Brooklyn, New York (collectively, the **"Real Estate"** or "**Property**"), and (ii) the Landlord Claims. The Real Estate and the Landlord Claims are to be conveyed together, in one simultaneous transaction, with (x) all easements, rights of way, air, zoning and/or development rights, reservations, privileges,

appurtenances, sidewalks, alleys, strips, gores and other estates and rights of Debtor, if any, pertaining to its interest in the Real Estate, and (y) all right, title and interest of Debtor, if any, in and to all alleys adjoining its interest in the Real Estate and in and to the land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining its interest in the Real Estate to the center line thereof and any award or payment made or to be made in lieu of any of the foregoing or any portion thereof (the Real Estate and the Personalty, together with all of the foregoing, are hereinafter sometimes collectively referred to herein as the **"Property"**).

### SECTION 2.2.    Purchase Price.

2.2.1. Subject to the terms and conditions herein contained, including, without limitation, Section 17.1 of this Agreement, the **"Purchase Price"** for the Property and the various assignments incidental thereto referred to herein is TWO MILLION FIFTY THOUSAND AND 00/100 DOLLARS **(US $2,050,000.00)**. The Purchase Price shall be payable (i) by the payment of the Escrow Deposit in immediate funds by wire transfer, and (ii) the balance in cash (by wire transfer) at the Closing as directed by Seller in writing at least two (2) Business Days prior to the Closing. Seller may direct, among other things, that Purchaser pay a portion of the Purchase Price at the Closing, in an amount or amounts specified by Seller, to persons or entities other than Seller for Seller's purposes, including to the Title Company (as defined hereinafter).

2.2.2. Concurrently with the execution and delivery hereof, Seller and Purchaser have agreed that, as security for the performance of Purchaser's obligations hereunder, Purchaser shall deposit with Escrow Agent, by wire transfer to the account described in Schedule III, a cash earnest money deposit in the amount of TWO HUNDRED FIVE THOUSAND AND 00/100 DOLLARS **(US $205,000.00)** equaling ten percent (10.00%) of the Purchase Price (the **"Initial Deposit"**).

2.2.3. In the event that Purchaser is selected as the successful bidder at the Auction, Purchaser shall deliver to Escrow Agent by wire transfer payable to Escrow Agent an additional deposit in an amount equal to an amount such that together with the Initial Deposit, the Escrow Deposit (as defined herein) shall be equal to ten percent (10.00%) of the increased Purchase Price pursuant to this Agreement, as it may be subsequently amended at the Auction (the **"Additional Deposit"**: the Initial Deposit together with the Additional Deposit, and any interest earned thereon shall be collectively referred to herein as the **"Escrow Deposit"**) within the following time periods TIME BEING OF THE ESSENCE: the earlier of one (1) Business Day after Purchaser is selected as the successful bidder or is designated back-up bidder pursuant to the terms hereof. The Escrow Deposit shall be held by Escrow Agent, in trust, in a non-interest bearing account pursuant to and in accordance with the provisions of an Escrow Agreement among Seller, Purchaser and Escrow Agent, a copy of which is attached hereto and made a part hereof as Exhibit A (the "**Escrow Agreement**").

2.2.4. The Parties agree that the Personalty has de minimis value. Accordingly, no portion of the Purchase Price is attributable to the Personalty.

## ARTICLE 3
## PERMITTED EXCEPTIONS; TITLE INSURANCE

**SECTION 3.1.**    **Sale Subject to.**    Subject to the terms and conditions of this Agreement and pursuant to Confirmed Plan and the Confirmation Order, Seller shall convey, and Purchaser shall accept good and insurable fee simple title to the Real Estate, insurable by the Title Company (as defined herein), or any other title company licensed in New York State as selected by Seller, at regular premiums, without exceptions or reservations of any type or kind, except (a) ALTA standard printed exceptions other than those that can be removed by the Sale Order, or by an affidavit of Seller to be provided pursuant to Section 3.2.3 hereof, (b) the Permitted Exceptions, and (c) the obligations expressly assumed by Purchaser under this Agreement. The parties hereby agree that **"Title Company"** shall mean Stewart Title Insurance Company (through its authorized agent, Kensington Vanguard National Land Services).

3.1.1.  Pursuant to the Sale Order, all liens, and claims (the **"Liens"**) shall attach to the net proceeds of the sale (the **"Net Proceeds"**) to the same extent they encumbered the Property. To the extent Seller is required to satisfy any of the Liens from the Net Proceeds, Seller shall make such payments in accordance with the Sale Order or by further order of the Bankruptcy Court.

**SECTION 3.2.**    **Title Report.**    Purchaser will promptly order an examination of title of the Property (the **"Title Report"**), at its sole cost and expense, within three (3) Business Days from receipt of an executed copy of this Agreement and will direct the Title Company to deliver copies of the Title Report to Seller's attorneys, as designated below, simultaneously with the delivery of same to Purchaser. Purchaser has the right, at its sole expense, to complete a new survey of the Property in connection with its title review.

3.2.1.  Purchaser further agrees that no later than the date that is twelve (12) days after the date hereof (the **"Title Report Objection Date"**) Purchaser will furnish to Seller's attorney a written notice (the **"Title Report Objection Notice"**) specifying any exceptions to title to the Property set forth in the Title Report which are not Permitted Exceptions and "subject to", which render title uninsurable and therefore, which Purchaser is not required to accept (the **"Non-Permitted Exceptions"**).

3.2.2.  Seller shall use reasonable efforts, at or prior to Closing, solely through the entry of the Sale Order and as provided in Section 3.1.1 above, to attempt to remove the following: (i) any and all of the Non-Permitted Exceptions that Debtor willfully placed of record or consented to be placed of record and (ii) any and all other Non-Permitted Exceptions that may be removed by the entry of the Sale Order. Seller shall have no obligation with respect to the clearance of title as required hereunder other than the delivery of the Sale Order conforming to this Agreement. Seller shall have the right to adjourn the Closing Date, from time to time, up to ninety (90) days in the aggregate for the purpose of removing/eliminating such Non-Permitted Exceptions. Notwithstanding the foregoing, any action taken by Seller to remove such defect, lien and/or encumbrance shall not be deemed an admission on Seller's part that such defect, lien and/or encumbrance is one which would give Purchaser the right to cancel this Agreement.

3.2.3. In the event that there exist any Non-Permitted Exception which is not removed through the entry of the Sale Order, Purchaser may elect within five (5) Business Days after the entry of the Sale Order, and may also elect within five (5) Business Days after the delivery to Seller's counsel of any update to the Title Report and/or survey of the Property showing any Non-Permitted Exception which is not removed through the entry of the Sale Order, as the case may be, to either (i) not consummate the transactions contemplated hereby, in which event this Agreement shall be terminated and of no further force and effect, the Escrow Deposit shall be delivered to Purchaser upon Purchaser's election to terminate this Agreement and neither of the parties hereto shall have any rights or obligations to the other hereunder or (ii) consummate the transactions contemplated hereby subject to such additional exceptions and proceed to Closing without an abatement of the Purchase Price. Purchaser's failure to timely deliver a notice electing to not consummate the transactions contemplated hereby shall be deemed Purchaser's election to consummate the transaction in accordance with the terms and conditions of this Agreement. Notwithstanding the foregoing, if Purchaser elects to terminate this Agreement as set forth above, Seller shall have the right to void such termination by providing written notice to Purchaser that Seller elects, in its sole discretion, to cure the Non-Permitted Exception by removing the same at or prior to Closing. In the event Seller elects to cure the Non-Permitted Exception or provide such credit, Purchaser shall be obligated to complete the transaction contemplated by this Agreement.

3.2.4. Seller agrees to execute, acknowledge and deliver a standard and customary owner's title affidavit at Closing as modified for a debtor in Chapter 11 and such other matters as the Title Company may reasonably require in order to issue a policy of title insurance to Purchaser in the manner required under this Agreement; provided however that Seller shall not be obligated to pay any amounts to or claims of third parties in order to do so (other than as required by the Sale Order or pursuant to Sections 3.1.1 (as and to the extent provided for therein).

**SECTION 3.3.    Permitted Exceptions. "Permitted Exceptions"** means:

3.3.1. all matters set forth in the Title Report, or an update thereof with respect thereto and not objected to in accordance with Section 3.2.1;

3.3.2. covenants, easements, restrictions and agreements of record and disclosed in the Title Report provided the same do not prohibit the use of the Improvements for their current use.

3.3.3. the state of facts that an accurate survey or physical inspection of the Property would show (including encroachments, projections, retaining walls and stoops), provided such facts do not render title uninsurable;

3.3.4. liens for unpaid taxes, water charges, sewer rents, vault charges, assessments, charges, rents and any other governmental charges, which are not yet due and payable and are apportioned in accordance with the provisions of Article 4 hereof;

3.3.5. all rights and easements, for electricity, gas, telephone, water, cable television and any other utilities to maintain and operate lines, cables, poles and distribution boxes in, over and upon the Real Estate;

3.3.6. possible minor projections and/or encroachments (of no more than 1 foot) of retaining walls, foundations, stoops, areas, steps, sills, trim, cornices, standpipes, fire escapes, coal chutes, casings, ledges, water tables, lintels, porticos, keystones, windows, hedges, copings, cellar doors, sidewalk elevators, fences, fire escapes and the like, or similar projections or objects upon, under or above any adjoining buildings and/or streets or avenues or those belonging to adjoining premises which encroach upon the Real Estate, or within any set back areas, provided that the Title Company shall insure that such projections or encroachments may remain undisturbed so long as the buildings and improvements shall stand and minor variations between the lines of record title and fences, retaining walls, hedges, and the like;

3.3.7. possible minor variations between the tax diagram or the tax map and the record description, to the extent they do not render title uninsurable at regular rates;

3.3.8. any and all violations of building, fire, sanitary, environmental, housing and similar laws, municipal ordinances, orders or requirements affecting the Property (being hereafter referred to collectively as the "**Violations**") from or by any federal, state, county or municipal department, agency, authority or bureau having or asserting jurisdiction (each, a "**Governmental Authority**") and provided, however, that all monetary fines, charges, penalties, judgments, liens and/or fees, together with any interest accruing thereon attaching to the Property or otherwise imposed as a result of the Violations shall be paid by Seller at the Closing;

3.3.9. building, zoning, subdivision and other governmental laws, codes and regulations, and landmark, historic and wetlands designations;

3.3.10. revocability or lack of right to maintain vaults, coal chutes, excavations, or subsurface equipment beyond the Property line;

3.3.11 any matter created or caused by Purchaser or its agents; Intentionally omitted.

3.3.12 rights of the public and adjoining owners in highways, streets, roads and lanes crossing the Property provided that the Title Company shall insure (at no additional cost to Purchaser) that no third parties have any claims for adverse possession or easements by prescription by virtue of the use of such highways, streets, roads and lanes crossing the Property;

3.3.13. standard pre-printed exceptions contained in the form of title insurance policy then issued by the Title Company as customarily modified following receipt of Seller's standard title affidavit;

3.3.14. any lien, encumbrance or other item from which the Property will be released on or before the Closing Date pursuant to the Sale Order;

3.3.15. Intentionally omitted.

3.3.16. any matters which the Title Company may raise as to insurability of the Property, provided that the Title Company shall agree to omit or insure without additional premium to Purchaser against collection of the same out of the Property; and

3.3.17   the rights of tenants or other persons in possession of the Property on the date of the Bankruptcy Court auction of the Property.

## ARTICLE 4
## APPORTIONMENTS AND PAYMENTS

**SECTION 4.1.**      **Apportionments Relating to the Property**.  The following shall be apportioned between Seller and Purchaser at the Closing with respect to the Property, as of 11:59 PM of the day immediately preceding the Closing Date (the "**Apportionment Date**"), and the net aggregate amount thereof either shall be paid by Purchaser to Seller or credited to Purchaser towards the Purchase Price, as the case may be, at the Closing (provided, however, that, other than as provided in Section 3.1.1, nothing in this Agreement shall obligate the Seller to pay any amounts due and owing or otherwise relating to prepetition obligations to any third party):

4.1.1. real property taxes, and any assessments (or installments thereof), including with respect to Business Improvement Districts, on the basis of the fiscal year for which payable; if the Apportionment Date shall be prior to the date on which the real property tax rate is fixed, the apportionment of real property taxes shall be made on the basis of the tax rate for the preceding year applied to the latest assessed valuation;

4.1.2. to the extent not metered, water rates and charges, sewer taxes and rents and electricity and other utility charges.  If water is metered,  the Seller shall obtain a final water meter reading not more than 30 days prior to Closing and if no final reading is obtained or there is no water meter reading, Seller shall establish an escrow in terms and amounts reasonably satisfactory to Purchaser and the Title Company to omit any exception to title in respect of payment of any such charges up to the Closing Date;

4.1.3    Intentionally omitted.

4.1.4    insurance proceeds received by  Debtor, if any, and payable to Purchaser pursuant to Article 13 hereof to the extent not applied to repair or restore the Property in accordance with the provisions of this Agreement. Intentionally omitted.

### SECTION 4.2.      Taxes and Assessments.

4.2.1. If, on the Closing Date, all or any portion of the Real Estate shall be or shall have been affected by assessments (including Business Improvement District assessments) that are, or which may become, payable in annual installments, of which the first installment is then a charge or lien or has been paid or if any of the improvements to be paid for thereby are in place or commenced, then, for purposes of this Agreement only, the installment(s) shall have been paid or the installment which shall be then due and payable shall be apportioned between Seller and Purchaser and all of the unpaid installments of any such assessments, including those which are to become due and payable after the date hereof, shall continue to be liens upon the Real Estate, it being understood and agreed that Seller and Purchaser shall be responsible for a pro rata share of such assessment, with Purchaser being responsible for the period from and after the Apportionment Date and Seller being responsible for the period prior to the Apportionment Date, regardless of when such installments are due and payable (provided, however, that, other than as

provided in Section 3.1.1, nothing in this Agreement shall obligate Seller to pay any amounts due and owing or otherwise relating to prepetition obligations to any third party). Notwithstanding any other provision of this Agreement, Seller shall have no responsibility for any taxes or assessments that become due or payable as a result of the loss of any exemption following the transfer of the Property.

4.2.2. To the extent that any refund of real property taxes, assessments (including Business Improvement District assessments), water rates and charges, sewer taxes and rents or any other utility made after the Closing Date is applicable to a period before the Closing Date, such refund shall be payable to Seller or returned by Purchaser to Seller, net of the actual costs incurred by Purchaser in obtaining same.

4.2.3. To the extent that any refund of real property taxes, assessments (including Business Improvement District assessments), water rates and charges or sewer taxes and rents made after the Closing Date is applicable to a period after the Closing Date, such refund shall be payable to Purchaser or returned by Seller to Purchaser, subject to the actual costs incurred by Seller in obtaining same (provided, however, that, other than as provided in Section 3.1.1, nothing in this Agreement shall obligate Seller to pay any amounts due and owing or otherwise relating to prepetition obligations to any third party).

**SECTION 4.3.** **Transfer of Utilities.** Purchaser, at its sole cost and expense, shall cause the transfer of all utility services for the Real Estate to Purchaser's name as of the Closing Date and Seller shall reasonably cooperate with Purchaser in connection therewith. If utility services shall not have been transferred to Purchaser's name for the Real Estate effective as of the Closing Date, then, at the Closing, any such charges with respect to services not so transferred shall be prorated, based upon the per diem charges obtained by using the most recent period for which readings of such utility services shall then be available. Purchaser, at its sole cost and expense, shall promptly thereafter cause such utility services to be transferred to Purchaser's name, and Seller shall reasonably cooperate with Purchaser in connection therewith. Purchaser shall be responsible for all charges for utility services incurred as of the date of Closing. Purchaser shall make all required deposits on account with utility companies or on account with municipalities and shall reasonably cooperate with Seller in having any deposits currently held by such companies and municipalities, returned to Seller. However, Seller shall be solely responsible for obtaining the return of its own utility company deposits, if any (provided, however, that nothing in this Agreement shall obligate Seller to pay any amounts due and owing or otherwise relating to prepetition obligations to any third party).

**SECTION 4.4.** **Transfer Taxes.** It is contemplated that the sale of the Property to Purchaser will be exempt from the imposition of all Transfer Taxes (defined below) pursuant to the Confirmed Plan, the Confirmation Order and the Sale Order. If for any reason the sale were not exempt from the imposition of Transfer Taxes, then Seller shall be responsible (either by payment or exemption) for any real property transfer taxes, transfer gains taxes, and other similar taxes and fees, if any, imposed on Seller by the State, county or municipality in which the Real Estate is located which are imposed in connection with the sale, assignment, transfer and conveyance of the Real Estate to Purchaser as contemplated by the provisions of this Agreement (collectively, the "**Transfer Taxes**"), provided, however, that, other than as provided in Section

3.1.1, nothing in this Agreement shall obligate Seller to pay any amounts due and owing or otherwise relating to prepetition obligations to any third party. Under no circumstances whatsoever shall Purchaser be required to pay any Transfer Taxes imposed in connection with the sale of the Real Estate to Purchaser.

**SECTION 4.5.** **Tax Returns.** At the Closing, Purchaser and Seller shall deliver to the Title Company a New York State Transfer Tax Return (TP-584), City of New York Real Property Transfer Tax Return (NYC-RPT) and Equalization form (RP-5217NYC) (collectively, the "**RE Tax Returns**") and deliver same to the Title Company for delivery to the appropriate authority.

**SECTION 4.6.** **Title Charges.** Purchaser shall pay the cost of Purchaser's title insurance premiums and any title search costs, the cost of a survey for the Property or any update thereto and all recording and filing fees, including, but not limited to, those in connection with the Deed.

**SECTION 4.7.** **Transaction Expenses.** Except as expressly provided herein, each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated hereby.

**SECTION 4.8.** **Survival.** The provisions of this Article 4 shall survive the Closing.

## ARTICLE 5
## COVENANTS REGARDING THE PROPERTY

**SECTION 5.1.** **Maintenance and Operation of the Property.** From the date of this Agreement until the earlier to occur of (x) termination of this Agreement or (y) the Closing Date, Seller shall;

5.1.1. maintain in full force and effect the casualty insurance policies currently in effect with respect to the Property, or policies providing similar coverage, subject to customary exceptions at the time of renewal or issuance, which, without limitation, may not insure against acts of terrorism, war (declared or undeclared), or the like, and shall deliver to Purchaser, upon request, reasonable evidence of same including copies of certificates of such insurance;

5.1.2. not enter into any new lease or modify/extend any existing lease for space at the Property;

5.1.3. not enter into or renew any of the service, maintenance, supply and other contracts relating to the operation, maintenance and construction of the Property, if any (collectively, together with any amendments or modifications thereto, the "Contracts") that will survive the Closing; and

5.1.4. not (i) further transfer, mortgage or encumber the Property, unless as required by the Bankruptcy Court or in connection with Debtor's pending bankruptcy, (ii) execute any easements, covenants, conditions, restrictions, or rights-of-way with respect to the Property

which survive Closing, (iii) enter into any recorded or unrecorded contracts with respect to the Property which are not by their terms terminable prior to Closing and not otherwise inconsistent with this Agreement, or (iv) seek any zoning changes or other governmental approvals with respect to the Property.

## ARTICLE 6
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

**SECTION 6.1.**    **Generally.**  Purchaser represents and warrants that:

6.1.1. (a) Purchaser is a duly formed and validly existing limited liability company under the Laws of the state or commonwealth of its formation and is in good standing under the Laws of the state or commonwealth of its formation and, to the extent required by Law, under the Laws of the State of New York, (b) Purchaser has the full right, authority and corporate power to enter into this Agreement, to consummate the transactions contemplated herein and to perform its obligations hereunder and under those Closing Documents to which it is a party, (c) each of the Persons executing this Agreement on behalf of Purchaser is authorized to do so, and (d) this Agreement constitutes a valid and legally binding obligation of Purchaser enforceable against Purchaser in accordance with its terms:

6.1.2. there are no legal or administrative proceedings pending or, to the best of Purchaser's actual knowledge, without investigation, threatened against or affecting Purchaser or Purchaser's Controlling Member that would adversely affect Purchaser's legal authority or financial ability to perform its obligations under this Agreement and the Closing Documents to which it is a party;

6.1.3. the execution and delivery of this Agreement, the consummation of the transactions contemplated hereby and the performance by Purchaser of its obligations hereunder and under the Closing Documents to which it is a party, do not and will not (a) violate or conflict with any judgment, decree or order of any court or any Law or permit applicable to it, or (b) breach any provisions of, or constitute a default under, any contract, agreement, instrument or obligation to which it is a party or by which Purchaser is bound;

6.1.4. the execution and delivery of this Agreement by Purchaser does not, and the performance of its obligations hereunder and under the Closing Documents to which it is a party will not, require the consent or approval of any public authority or any other Person, or any lender from which Purchaser may seek to obtain financing, as may be applicable provided however that Purchaser acknowledges and agrees that its obligations under this Agreement are not contingent upon any such financing;

6.1.5. Purchaser has committed funds and/or committed financing sources as of the date of execution, sufficient to close the transactions contemplated by this Agreement on or before the Scheduled Closing Date; and Purchaser's Federal Tax Identification Number is _____.

6.1.6. Neither Purchaser nor any of Purchaser's affiliates or any of their managers, members, partners, shareholders or agents, have any legal or contractual relationship

with Cort & Medas Associates LLC, Kenrick Cort, or any of their affiliates, managers, members, partners, shareholders or agents (each, a " Debtor Affiliate"). Further, Purchaser does not have an "Affiliated Relationship" (as such term is defined below) with Debtor or Kenrick Cort. For purposes of this Agreement, "Affiliated Relationship" means with respect to any specified Person, a relationship of any kind in which any other Person directly or indirectly controls, is controlled by or is under common control with such specified Person. "Affiliated Relationship" also includes an understanding, arrangement, or agreement (written or oral) between or among two or more Persons. No Debtor Affiliate has and it is not anticipated that any Debtor Affiliate will have any interest in the Purchaser.

      **SECTION 6.2.**       **Closing Conditions; Survival of Representations and Warranties.** The following are conditions precedent to the obligation of Seller to close title under this Agreement, any or all of which may at Seller's option be waived in writing:

      6.2.1. Each of the representations and warranties of Purchaser set forth in this Agreement shall be deemed to have been repeated by Purchaser, at and as of the Closing Date with the same force and effect as if first made on and as of such date. It shall be a condition to Seller's obligation to close hereunder that all such representations and warranties of Purchaser be true and correct in all material respects as of the Closing Date.

      6.2.2. Purchaser shall have (or, with respect to obligations of Purchaser to be performed on the Closing Date, Purchaser shall be ready, willing and able to perform same on the Scheduled Closing Date) (a) delivered, or caused to be delivered, all of the Closing Documents to which it is a party and all other documents, instruments and other items required to be delivered by Purchaser at or prior to Closing (including, without limitation, pursuant to Section 9.1.2), (b) tendered the Purchase Price in accordance with the terms of this Agreement, and (c) performed in all material respects all other material obligations on Purchaser's part to be performed hereunder on or prior to the Closing Date.

      6.2.3. All other conditions precedent expressly set forth herein to Seller's obligation to consummate the transaction contemplated hereby have been satisfied (or waived in writing by Seller).

      6.2.4. The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall have become a Final Order

      6.2.5. The representations, warranties and certifications of Purchaser set forth in this Agreement shall survive the Closing.

## ARTICLE 7
## REPRESENTATIONS AND WARRANTIES OF SELLER

**SECTION 7.1.**    **Generally.**    Seller represents and warrants, to the best of its knowledge, that the following are true and correct on the date hereof and as of the date of the Closing:

7.1.1. (a) subject to the Confirmed Plan, the Confirmation Order and entry of the Sale Order contemplated under the Confirmed Plan, Seller has the full right, authority and power to enter into this Agreement, and, subject to the entry of the Sale Order, to consummate the transactions contemplated herein and to perform Seller's obligations hereunder and (b) subject to the entry of the Sale Order, this Agreement constitutes a valid and legally binding obligation of Seller enforceable in accordance with its terms;

7.1.2. The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance by Seller of its obligations hereunder do not and will not conflict with or violate any Law, rule, judgment, regulation, order, writ, injunction or decree of any court or governmental or quasi-governmental entity having jurisdiction over Seller including the United States of America, the State of New York or any political subdivision of either of the foregoing, or any decision or ruling of any arbitrator to which Seller is a party;

7.1.3. Neither Seller, nor any person controlling or controlled by Seller, is a country, territory, individual or entity named on a government list, and the monies used in connection with this Agreement and amounts committed with respect thereto, were not and are not derived from any activities that contravene any applicable anti-money laundering or anti-bribery laws and regulations (including funds being derived from any person, entity, country or territory on a government list or engaged in any unlawful activity defined under Title 18 of the United States Code, Section 1956(c)(7)). For purposes of this paragraph "Government List" means any of (a) the two lists maintained by the United States Department of Commerce (Denied Persons And Entities), (b) the list maintained by the United States Department of Treasury (specially designated nationals and blocked persons), and (c) the two lists maintained by the United States Department of State (Terrorist Organizations and Debarred Parties). Seller is not a person or an entity described by Section 1 of the Executive Order (No. 13,224) Blocking Premises and Prohibiting Transactions With Persons Who Commit, Threaten To Commit, or Support Terrorism, 66 Fed. Reg. 49,079 (September 24, 2001);

7.1.4. Seller is not a "foreign person" (as defined in the Internal Revenue Code); and

7.1.5. Debtor's Federal Tax Identification Number is . 14-2008329.

**SECTION 7.2.**    **Property Representations.**    Seller represents and warrants to Purchaser to the best of its knowledge, without inquiry, that, as of the date hereof, with respect to the Property:

7.2.1. Debtor is the sole owner of the Property.

**SECTION 7.3.**    **Closing Conditions.** The following are conditions precedent to the obligation of Purchaser to close title under this Agreement, any or all of which may at Purchaser's option be waived in writing:

7.3.1. Except to the extent otherwise unnecessary as a result of the Sale Order and except as may be updated by Seller in writing to maintain accuracy due to one or more immaterial factual changes arising after the date hereof, each of the representations and warranties of Seller set forth in this Agreement shall be deemed to have been repeated by Seller, at and as of the Closing Date, with the same force and effect as if first made on and as of such date.

7.3.2. Seller shall have delivered all of the documents and other items required pursuant to Section 9.1.1 of this Agreement and shall have performed all other material covenants, undertakings and obligations herein agreed to be performed by it, and complied with all material conditions required by this Agreement to be performed or complied with by Seller at or prior to the Closing.

7.3.3. At the time of the Closing, title to the Real Estate shall be as provided in this Agreement and the Title Company shall be willing to issue fee title insurance policies in favor of Purchaser subject only to the Permitted Exceptions.

7.3.4. The representations, warranties and certifications of Seller set forth in this Agreement shall not survive the Closing, unless otherwise provided in this Agreement.

7.3.5. The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall have become a Final Order or, if not final, not be subject to a stay on its effectiveness, finding, among other things, that Purchaser qualifies as a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**SECTION 7.4.**    **Knowledge of Seller.** Whenever a representation or warranty is made in this Agreement on the basis of the knowledge of Seller, such representation and warranty is made solely on the basis of the actual, as distinguished from implied, imputed or constructive, knowledge on the date that such representation and warranty is made, without inquiry or investigation or duty, and without the personal knowledge of any other officers, directors or employees of Seller, or third parties.

## ARTICLE 8
## CLOSING DATE

**SECTION 8.1.**    **Closing Date.** The consummation of the transactions contemplated by this Agreement (the **"Closing"**), subject to Section 3.2.2, shall take place on the "Closing Date" which shall be a date mutually agreeable to Seller and Purchaser that is not later than twenty-one days after the Bankruptcy Court enters the Sale Order (the **"Scheduled Closing Date"**), which "Closing Date", TIME BEING OF THE ESSENCE WITH RESPECT TO PURCHASER'S OBLIGATIONS HEREUNDER. The Scheduled Closing Date (it being agreed that neither Seller nor Purchaser shall have any obligation to agree to any adjournment of the Closing), is referred to herein as the **"Closing Date"**. The Closing shall occur in escrow through the Title Company.

## ARTICLE 9
## CLOSING DOCUMENTS

**SECTION 9.1.**    Closing.

9.1.1. At the Closing, contemporaneously with Purchaser's delivery to Seller of all of the Closing Documents required to be delivered by Purchaser hereunder, there shall be delivered to Purchaser, duly executed by or on behalf of Seller in recordable form, where applicable, those Closing Documents to be delivered by Seller as set forth on Schedule IV attached hereto and made a part hereof.

9.1.2. At the Closing, contemporaneously with delivery to Purchaser of all of the Closing Documents required to be delivered by Seller hereunder, Purchaser shall deliver or cause to be delivered to Seller those Closing Documents to be delivered by Purchaser, duly executed by Purchaser in recordable form, where applicable, as set forth on Schedule V attached hereto and made a part hereof (the documents described in this Section 9.1.1 and in Section 9.1.2 and all other documents required to be delivered hereunder are referred to collectively as the **"Closing Documents"**).

**SECTION 9.2.**    **Further Assurances**.  Seller and Purchaser each agree, at any time and from time to time at or after the Closing, to execute, acknowledge where appropriate, and deliver or cause to be executed, acknowledged and delivered such further instruments and documents and to take such other action as the other of them, the Title Company or the Bankruptcy Court may reasonably request to carry out the intents and purposes of this Agreement. The provisions of this Section 9.2 shall survive the Closing.

## ARTICLE 10
## NOTICES

**SECTION 10.1.**    **Notices.**  Any notice, demand or request required or permitted to be given under this Agreement (collectively, **"Notices"**) must be in writing and given to the party to whom or which such notice is being sent, (a) by nationally recognized overnight delivery service with receipt acknowledged in writing or (b) by hand delivery, against a signed receipt, in each case, addressed as follows:

If to Seller
(Plan Proponent)
to:

1414 Utica Avenue Lender LLC
c/o Rubin LLC
345 Seventh Avenue, 21st Floor
New York New York 10004
Attention: Paul Rubin, Esq.

and

Horowitz PLLC
96 Greenwich Street, 5th Floor

New York, New York 10006
Attention: Kenneth P. Horowitz, Esq.

If to Purchaser, to:    CALMARK EQUITIES CORP. OR AN ENTITY OWNED OR
CONTROLLED BY ITS PRINCIPAL, MARK KOPLOWITZ
12 Lawrence Avenue
Brooklyn, NY 11230

with a copy to:    Deutsch &Schneider, LLP
79-37 Myrtle Avenue
Glendale, New York 11385
Attn: Doris Barkhordar, Esq.

If to Escrow Agent,
to:    Horowitz PLLC
96 Greenwich Street, 5th Floor
New York, New York 10006
Attention: Kenneth P. Horowitz, Esq.

In the event of overnight delivery or by hand delivery, notices shall be deemed effective on the next Business Day following deposit with the delivery service or following the day of such hand delivery against appropriate receipt. From time to time either party may designate another or additional addresses for all purposes of this Agreement by giving the other party no less than ten (10) days' prior notice of such change of address in accordance with the provisions of this Article 10. Each party's counsel shall have the right to deliver notices on behalf of its client and any such notice shall be effective as if sent by such party.

## ARTICLE 11
## BROKER

Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker, agent or any other Person in connection with the transaction contemplated by this Agreement other than Rosewood Realty Group, 38 East 29th Street, 5th Floor, New York, New York 10016 (the "**Broker**"). Seller and Purchaser hereby indemnify the other and holds the other harmless from and against any and all claims for commission, fee or other compensation by any other Person other than Broker and for any and all costs incurred by such party in connection with such claims, including reasonable attorneys' fees and disbursements. Subject to approval of the Bankruptcy Court, Purchaser agrees to pay Broker at closing a Buyer's Premium in the amount of five percent (5%) of the Purchase Price in accordance with the terms of the Bid Procedures. The provisions of this Article 11 shall survive the Closing or the sooner termination of this Agreement.

## ARTICLE 12
## DEFAULTS; REMEDIES

**SECTION 12.1.**    **Purchaser's Default**. If Purchaser shall (a) fail or refuse to close as and when required by the terms of this Agreement, or (b) otherwise be in default hereunder, which default shall continue for five (five) days after receipt of notice to Purchaser and its counsel

specifying such default, or (c) fail to deposit the Additional Deposit after three (3) days written notice by Seller to Purchaser and its counsel, the parties hereto agree that the damages that Seller would sustain as a result thereof would be substantial, but would be difficult to ascertain. Accordingly, the parties hereto agree that in the event of such default, failure or refusal by Purchaser, Seller's sole and exclusive remedy shall be to terminate this Agreement and for Plan Proponent's counsel to retain the Escrow Deposit for the benefit of the Debtor's bankruptcy estate in which event Escrow Agent shall deliver the Escrow Deposit to or at the direction of Plan Proponent, in which event Purchaser, Plan Proponent and Seller shall have no further rights or obligations under this Agreement, except those expressly provided herein to survive the termination of this Agreement.

  **SECTION 12.2.**  **Seller's Default**. If Seller, shall (a) fail or refuse to close as required by the terms of this Agreement or (b) otherwise be in default hereunder, which default shall continue for five (5) days after written notice to Seller and its counsel thereof, then Purchaser's sole remedy shall be either (i) to terminate this Agreement and receive a return of the Escrow Deposit or (ii) if the Sale Order is effective, to seek relief from the Bankruptcy Court to enforce the terms of the Sale Order and obtain Specific Performance. Purchaser expressly agrees however, that Purchaser shall not have the right to seek or recover any actual, consequential or punitive damages or any similar additional sums or amounts against Seller or Plan Proponent for any matter arising under or related to this Agreement. This provision shall survive the Closing or the termination of this Agreement.

## ARTICLE 13
## CASUALTY; CONDEMNATION

  **SECTION 13.1.**  **Casualty**. Notwithstanding anything to the contrary at law or otherwise, Purchaser and Seller acknowledge and agree that in the event that prior to Closing, the Property shall be damaged by fire other casualty and suffer a "Material Loss", as such term is defined below, (whether or not such damage or casualty is covered by insurance), Purchaser shall have the option to either (a) elect to terminate this Agreement and receive back the Escrow Deposit and all parties hereto shall be released and discharged from any further obligation to each other hereunder with respect to the Property (except those expressly stated to survive the termination of this Agreement). and this Agreement shall be of no further force and effect or (b) to consummate the transactions contemplated hereby and proceed to Closing without abatement of the Purchase Price; provided, however, that Purchaser must give notice to Seller of such election no later than ten (10) days after Purchaser first becomes aware of the Material Loss. If Purchaser fails to give notice to Seller within that time, TIME BEING OF THE ESSENCE FOR PURCHASER TO GIVE SUCH NOTICE, Purchaser shall proceed to Closing as if the damage were not a Material Loss. If a casualty loss that is not a Material Loss occurs, Purchaser shall consummate the transactions contemplated in this Agreement (as such loss shall not excuse Purchaser's obligations to consummate the transactions contemplated herein), and the parties shall proceed to Closing without any credit, abatement or reduction of the Purchase Price. In the event that either (i) Purchaser elects to consummate the transactions contemplated hereby and proceed to Closing or (ii) Purchaser is obligated to consummate the transactions contemplated herein because the damage was not a Material Loss, Purchaser shall be entitled to receive all insurance proceeds in connection with any such casualty which occurs prior to the Closing Date and Purchaser shall

consummate the contemplated transactions in accordance with the terms set forth in this Agreement (as the same may hereafter be modified or amended pursuant to the provisions of this Agreement or by Purchaser at the Auction). In such event, Seller shall assign to Purchaser (or use its best efforts to cause Debtor to assign to Purchaser) at the Closing, by written instrument in form and substance reasonably satisfactory to Purchaser, all of Debtor's interest in any insurance proceeds which may be payable to Debtor on account of any such fire or casualty, and shall deliver to Purchaser any such proceeds actually theretofore paid, less any amounts actually and reasonably incurred or expended by or for the account of Seller or Debtor for the cost of any compliance with laws, protective restoration or emergency repairs made by or on behalf of Seller or Debtor (to the extent neither Seller nor Debtor has not theretofore been reimbursed by its insurance carriers for such expenditures). For purposes of this Section 13.1 only, the term "Material Loss" shall mean a fire or other casualty prior to Closing where the cost of repairing such damage, excluding business interruption, shall amount to at least $500,000, as determined by the casualty insurer or insurers insuring the Property.

**SECTION 13.2.    Condemnation.** If, prior to the Closing, all or a Material Part (as hereinafter defined) of the Property is taken by eminent domain, Purchaser may, by notice to Seller given within ten (10) Business Days after notice from Seller to Purchaser of the taking, elect to cancel this Agreement. In the event that Purchaser shall so timely elect, the Escrow Deposit shall be paid to Purchaser and neither of the parties hereto shall have any rights or obligations to the other hereunder except those expressly stated to survive the termination of this Agreement. Unless this Agreement is so canceled, or if less than a Material Part of the Property is taken by eminent domain, this Agreement shall remain in full force and effect in which event Seller shall, on the Closing Date, and upon receipt of the balance of the Purchase Price, pay to Purchaser (or use its best efforts to cause Debtor to pay to Purchaser) any sums of money collected by Seller (or by Debtor, as the case may be) as an award for any taking by eminent domain, after deducting any reasonable amount which Seller or Debtor may have agreed or been obligated to pay in obtaining such award, including reasonable attorneys' fees and disbursements. Seller shall not negotiate, compromise, or settle any such award without Purchaser's prior consent, which consent shall not be unreasonably withheld, conditioned or delayed. In addition, Seller shall assign, transfer and set over to Purchaser all of Debtor's right, title and interest in and to any portion of any condemnation award not yet received by Debtor or by Seller, on behalf of Debtor. For purposes of this Section 13.2 only, **"Material Part"** shall mean a taking of more than ten (10%) percent of the Property. The provisions of this Article 13 are intended to constitute an "express provision to the contrary" within the meaning of Section 5-1311 of the New York General Obligations Law. This provision shall survive the Closing.

## ARTICLE 14
## AS-IS; WHERE-IS;
## DISCLAIMER; WAIVER OF CLAIMS

### SECTION 14.1.    Disclaimers; As-Is, Where-Is Condition.

14.1.1. Purchaser acknowledges and represents that it (a) is a sophisticated purchaser, with experience in owning and operating real property in the nature of the Property, (b) realizes the nature of this transaction, understands and is freely taking risks, if any, involved in

connection with this transaction, (c) has undertaken such independent investigations and evaluations of the Property as it has determined to be necessary or desirable in connection with the transaction contemplated herein, including the matters set forth in Section 14.1.2 below, (d) acknowledges that the foregoing is reflected in the Purchase Price and the terms upon which Purchaser is willing to purchase and Seller is willing to sell, and (e) realizes that 1414 Utica Lender LLC is entering in this Agreement as "seller" solely in the capacity of the Plan Proponent of 1414 Utica Avenue Lender's Amended Plan of Reorganization for Cort & Medas Associates, LLC, as Debtor, and not in 1414 Utica Avenue Lender LLC's individual or personal capacity, and, as such, there is no privity of contract or legal relationship between Purchaser and 1414 Utica Avenue Lender LLC in its individual or personal capacity.

14.1.2. Except as otherwise expressly set forth in this Agreement, the Property is being sold by Seller and Purchaser agrees to accept the Property AS IS AND WHERE IS, in its condition on the date hereof (subject to reasonable wear and tear and natural deterioration between the date hereof and the Closing Date). Purchaser acknowledges, represents and warrants that (i) Purchaser has had ample opportunity to make an independent investigation and examination of the Property (and all matters of every nature related thereto), and to become fully familiar with the physical condition, state of title, compliance with Law and environmental conditions of the Property, (ii) Purchaser inspected, examined, investigated and sampled the Property to its satisfaction and is familiar with the physical conditions, state of title, compliance with Law and environmental conditions of the Property and uses thereof and will rely on that inspection, examination, investigation and sampling, (iii) Purchaser has inspected, examined and investigated to its satisfaction all laws, ordinances, and governmental rules and regulations relating thereto and is purchasing the Property subject to any Violations thereof, (iv) Purchaser has inspected and examined to its satisfaction all licenses and permits relating to the facility, including but not limited to environmental and operational permits, and it agrees to be bound the terms of those licenses and permits and/or will ensure that it obtains new or additional licenses and permits to fully comply with all applicable governmental rules and regulations, (v) Purchaser has independently investigated, analyzed and appraised the value and the profitability of the Property, (vi) Purchaser has independently investigated the tenant files made available for review by Purchaser and all other due diligence documents delivered to Purchaser by Seller, (vii) Purchaser has independently investigated and evaluated all matters of a financial nature relating to the Property, and (viii) Debtor, Seller, Plan Proponent and Broker have not made and shall not make any verbal or written representations, warranties or statements of any nature or kind whatsoever to Purchaser, whether express or implied, with respect to the above, and, in particular, except as expressly set forth herein, no representations or warranties have been made or shall be made with respect to (a) the physical condition or operation of the Property, including the existence of any environmental hazards or conditions thereon (including the presence of asbestos containing materials or the release or threatened release of Hazardous Materials), (b) the revenues or expenses of the Property, (c) the zoning and other laws applicable to the Property or the compliance of the Property therewith, (d) the status of any approvals required for the development of the Property, (e) the nature and extent of any matter affecting title to the Property or to any personalty, (f) the quantity, quality, or condition of the personalty, or (g) any other matter or thing whatsoever affecting or relating to the Property, or any portion thereof, the interests therein to be conveyed to Purchaser pursuant to the terms of the transactions contemplated hereby or the status thereof. Purchaser has had the

opportunity to inspect the Property and will rely on that inspection and its other investigations and evaluations of the Property.

14.1.3. Purchaser acknowledges that Debtor, Seller and Plan Proponent have not made, and no such party is liable for or bound in any manner by, any express or implied warranties, guarantees, promises, statements, inducements, representations or information pertaining to the Property or any part thereof, the physical condition, size, zoning, income, expenses or operation thereof, the uses which can be made of the same or of any other manner or thing with respect thereto.  Without limiting the foregoing, and for the avoidance of any doubt, Purchaser acknowledges and agrees that Debtor, Seller and Plan Proponent are not liable for or bound by, and Purchaser has not relied upon, any verbal or written statements, representations, or any other information respecting the Property furnished by Debtor, Seller, Plan Proponent or any broker, employee, agent, consultant or other person representing or purportedly representing Seller.

14.1.4. Intentionally Omitted.

14.1.5. Purchaser waives any and all rights to bring an action or a claim against Debtor or Seller (or Plan Proponent) arising out of or related to (i) the past, present, or future environmental condition associated with the Property, (ii) past, present, or future environmental remediation of the Property, (iii) implied statements, representations and/or warranties made by Debtor or Seller or any of their respective agents concerning the environmental conditions of the Property and (iv) violation of any Environmental Law or liability imposed pursuant to any Environmental Law.

14.1.6. Purchaser waives any and all rights to bring an action or claim against Debtor or Seller  (or Plan Proponent) for contribution or indemnification related to the cost or expenses that Purchaser may incur to investigate or remediate the Property and/or to defend against any governmental, citizen, or private actions or proceedings arising out of or related to the past, present, or future environmental conditions of the Property.

14.1.7. Except as set forth in this Agreement, Debtor and Seller  hereby specifically disclaim any warranty, guaranty, oral or written, express or implied or arising by operation of law or otherwise, with respect to the matters referred to in this Section 14.1 and any warranty of condition, habitability, merchantability or fitness for a particular purpose, in respect to the Property.  Purchaser declares and acknowledges that this express disclaimer shall be considered a material and integral part of this sale and is reflected in the consideration payable by Purchaser hereunder and, as an inducement for Seller  to proceed with this transaction, Purchaser further declares and acknowledges that this disclaimer has been brought to the attention of Purchaser and explained in detail and that Purchaser has voluntarily and knowingly consented thereto.

**SECTION 14.2.    No Claim  Against Plan Proponent; Release.**. The Purchaser Related Parties waive any and all rights to bring an action or a claim against Plan Proponent or Plan Proponent's direct or indirect members, partners, shareholders, officers, directors, employees, agents, affiliates, parents and their respective successors and assigns (collectively, the 'Plan Proponent's Related Parties") with respect to any matter or thing arising under or pursuant to this

Agreement or the Property and hereby releases the Plan Proponent Related Parties from and against any and all claims which the Purchaser Related Parties has or may have arising from or related to any matter or thing related to or in connection with this Agreement or the Property and the Purchaser Related Party shall not look to Plan Proponent or Plan Proponent's Related Parties or their respective successors and assigns in connection with the foregoing for any redress or relief. This release shall be given full force and effect according to each of its express terms and provisions, including those relating to unknown and unsuspected claims, damages and causes of action. The provisions of this Section 14.2 shall survive the termination of this Agreement or the Closing and shall not be deemed to have merged into any of the documents executed or delivered at the Closing. To the extent required to be operative, the disclaimers and warranties contained herein are "conspicuous" disclaimers for purposes of any applicable law, rule, regulation or order. Purchaser declares and acknowledges that the foregoing provisions of this Section 14.2 shall be considered a material and integral part of this Agreement, but for which Seller would not have agreed to proceed with this transaction and execute this Agreement.

**SECTION 14.3.** **Acceptance of Closing Documents; Waivers.** Except for those matters expressly set forth in this Agreement to survive the Closing and except for the agreements of Seller and Purchaser set forth in the Closing Documents or otherwise entered into at the Closing, Purchaser's acceptance of the Deed and the other Closing Documents shall be and be deemed to be an acknowledgment by Purchaser that Seller has fully performed, discharged and complied with all of Seller's obligations, covenants and agreements hereunder to be performed prior to Closing and that Seller shall have no further liability with respect thereto.

**SECTION 14.4.** **Survival.** The provisions of this Article 14 shall survive the Closing.

## ARTICLE 15
## BANKRUPTCY MATTERS

**SECTION 15.1** Purchaser acknowledges that the Property is owned by Debtor, and Debtor has filed a voluntary chapter 11 case pursuant to the Bankruptcy Code and that consummation of the transactions contemplated herein is subject to Seller's receipt of requisite authority by the Bankruptcy Court pursuant to the **Sale Order** approving the sale of the Property to Purchaser.

**SECTION 15.2** Purchaser acknowledges that the Seller's obligations under this Agreement are subject to and contingent upon entry of a Sale Order by the Bankruptcy Court authorizing and approving the transaction contemplated by this Agreement. Purchaser further acknowledges that the sale contemplated herein is subject to Purchaser being determined by the Bankruptcy Court as having submitted the highest and best offer for the Property and the Landlord Claims. This Agreement is subject to the consideration of higher or better competing bids for the purchase of the Property and the Landlord Claims (each, a "**Competing Bid**"). Notwithstanding the execution of this Agreement, Debtor and Seller are permitted to cause their brokers and professionals to further market and initiate contact with, solicit or encourage submission of any inquiries, proposals, or offers by any person (in addition to Purchaser and its representatives) in connection with any sale or other disposition of the Property.

**SECTION 15.3**        Purchaser further acknowledges that the sale of the Property and the Landlord Claims is subject to the terms of the Bid Procedures, which would govern any auction for the Property and Landlord Claims that may be conducted if another potential buyer submits a Competing Bid.  Purchaser agrees to comply with the Bid Procedures with respect to its offer to purchase the Property pursuant to this Agreement.

**SECTION 15.4        Break-Up Fee.**

15.4.1        In consideration for Purchaser having expended, and continuing to expend, considerable time and expense in connection with this Agreement and the negotiation thereof, in the event that a Competing Bid is accepted by Seller, the Bankruptcy Court issues an order approving the transaction with the party making such Competing Bid as the highest or otherwise best offer for the Property and the Landlord Claims (an **"Alternative Transaction"**) and an Alternative Transaction is consummated, Purchaser shall be entitled to a break-up fee equal to SIXTY-ONE  THOUSAND AND FIVE HUNDRED AND 00/100 DOLLARS ($61,500.00), in addition to  reasonable and documented out-of-pocket fees and expenses not to exceed TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,0000) (collectively, the **"Break-Up Fee"**).  The Break-Up Fee shall be paid to Purchaser from the proceeds of and upon the consummation of an Alternative Transaction.

15.4.2        If an Order is entered by the Bankruptcy Court approving a Competing Bid, (i) Purchaser shall remain, at Seller's option, the back-up bidder (the **"Back-Up Bidder"**) until the consummation of the Alternative Transaction consistent with the terms of the Bid Procedures and (ii) the Escrow Deposit shall continue to be held pursuant to the terms of this Agreement until the consummation of the Alternative Transaction.  If the Alternative Transaction shall be consummated, (i) this Agreement shall automatically be deemed terminated, (ii) the Escrow Deposit shall be promptly returned to Purchaser, (iii) Purchaser shall be entitled to the Break Up Fee as set forth in this Agreement and (iv) neither of the parties hereto shall have any further rights or obligations to the other hereunder except those expressly stated to survive the termination of this Agreement  In the event the Alternative Transaction is not consummated, Purchaser, as Back-Up Bidder, shall be obligated to consummate the contemplated transactions in accordance with the terms set forth in this Agreement

### ARTICLE 16
### ESCROW

**SECTION 16.1  Escrow Terms.**  The Escrow Deposit shall be held in escrow by Escrow Agent in accordance with the terms of the Escrow Agreement.

### ARTICLE 17
### INTENTIONALLY OMITTED

## ARTICLE 18
## MISCELLANEOUS

**SECTION 18.1     Entire Agreement.** This Agreement, the Exhibits and Schedules annexed hereto, and any contemporaneously executed agreements, are the entire agreement between Seller and Purchaser concerning the sale of the Property and all understandings and agreements heretofore had or made between the parties hereto are merged in this Agreement which, together with aforementioned agreements and other items, alone fully and completely expresses the agreement of the parties hereto.

**SECTION 18.2     Modification.** Except as otherwise provided herein, this Agreement may not be changed, modified, supplemented or terminated, except by an instrument executed by the parties hereto which are or will be affected by the terms of such change, modification, supplement or termination. Either party hereto may waive any of the terms and conditions of this Agreement made for its benefit, provided such waiver is in writing and signed by the party waiving such term or condition.

**SECTION 18.3     Binding Agreement.** Subject to the provisions of this Agreement, the terms, covenants, agreements, conditions, representations and warranties contained in this Agreement shall inure to the benefit of and be binding upon the respective parties hereto. This Agreement shall not inure to the benefit of or be enforceable by any other Person.

**SECTION 18.4     Assignment.** Without the express written consent of the Seller, this Agreement may not be assigned by Purchaser, including any assignment by operation of law, except that Purchaser may assign this Agreement to an entity owned and controlled by Mark Koplowitz, the principal of the Purchaser. Except as provided for hereunder, any assignment by Purchaser without Seller's prior written consent shall be deemed null and void ab initio and shall be a material default entitling Seller, at its option, to exercise any of its powers, privileges, rights or remedies under this Agreement or at law or in equity. If Seller shall consent to an assignment, any such assignee shall assume all duties and obligations of Purchaser pursuant to this Agreement. Any change in control of Purchaser or of any of the direct or indirect ownership interests in Purchaser, at any level or tier of ownership, whether in one transaction or a series of transactions, shall constitute an assignment for purposes of this Section 18.4. .

**SECTION 18.5     Illegality.** If any term or provision of this Agreement or the application thereof to any Person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by Law.

**SECTION 18.6     Choice of Law.** EXCEPT IN SUCH MATTERS AS ARE GOVERNED BY THE BANKRUPTCY CODE, THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES ANNEXED HERETO, SHALL BE GOVERNED BY, INTERPRETED UNDER, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

**SECTION 18.7    Construction.** The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. Unless stated to the contrary, all references to Articles, Sections, paragraphs or clauses herein shall be to the specified Article, Section, paragraph or clause of this Agreement, and all references to Exhibits and Schedules shall be to the specified Exhibits and Schedules attached hereto. All Exhibits and Schedules attached hereto are made a part hereof. All terms defined herein shall have the same meaning in the Exhibits and Schedules, except as otherwise provided therein. All references in this Agreement to "**this Agreement**" shall be deemed to include the Exhibits and Schedules attached hereto. The terms "**hereby**", "**hereof**", "**hereto**", "**hereunder**" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used. Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees. The term "**including**" when used herein shall mean "**including, without limitation.**" Wherever in this Agreement the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

**SECTION 18.8    Binding Effect; Assignment; Successors and Assigns.** This Agreement shall apply to, be binding in all respects upon and inure to the benefit of the parties and their respective successors, administrators and permitted assigns.    Except to the extent provided for in Section 18.4 of this Agreement, no assignment of this Agreement or of any rights or obligations hereunder may be made by any party (by operation of Law or otherwise) without the prior written consent of Purchaser and Seller and any attempted assignment without the required consents shall be void. No permitted assignment of any rights hereunder and/or assumption of obligations hereunder shall relieve the parties hereto of any of their obligations. Nothing expressed or referred to in this Agreement will be construed to give any Person other than the parties to this Agreement any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement. This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement and their respective successors, administrators and permitted assigns.

**SECTION 18.9    Ambiguities.** Each party acknowledges that it and its counsel have reviewed this Agreement, and the parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

**SECTION 18.10    Expenses.** If any legal action or other proceeding is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover its fees and costs, including reasonable attorneys' fees, court costs and other costs incurred in such action or proceeding, in addition to any other relief to which it or they may be entitled. The provisions of this Section shall survive the Closing or earlier termination of this Agreement.

**SECTION 18.11    Counterparts.** This Agreement may be executed in counterparts, each of which together shall be deemed to be an original and all of which shall constitute one and the same Agreement. Any counterpart may be executed by facsimile or PDF signature and such facsimile or PDF signature shall be deemed an original.

**SECTION 18.12    Waiver of Trial by Jury.** THE RESPECTIVE PARTIES HERETO SHALL AND THEY HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, OR FOR THE ENFORCEMENT OF ANY REMEDY UNDER ANY STATUTE, EMERGENCY OR OTHERWISE.    THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR EARLIER TERMINATION OF THIS AGREEMENT.

**SECTION 18.13    Third Party Beneficiaries.** Except as expressly set forth herein, no Person other than the parties hereto, shall have any rights or claims under this Agreement, with the exception of 1414 Utica Avenue Lender LLC, as secured creditor and Plan Proponent.

### SECTION 18.14    Jurisdiction.

18.14.1  FOR THE PURPOSES OF ANY SUIT, ACTION OR PROCEEDING INVOLVING THIS AGREEMENT, PURCHASER AND SELLER EACH HEREBY EXPRESSLY SUBMITS TO THE JURISDICTION OF THE BANKRUPTCY COURT AND PURCHASER AND SELLER EACH AGREES THAT SUCH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY SUCH SUIT, ACTION OR PROCEEDING COMMENCED BY EITHER PARTY.

18.14.2  Intentionally omitted.

18.14.3  THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR EARLIER TERMINATION OF THIS AGREEMENT.

**SECTION 18.15    No Recording.** Purchaser covenants and agrees that it has no right and in no event will Purchaser record or cause to be recorded this Agreement or any memorandum hereof or affidavit, assignment or other document relating to this Agreement prior to the Closing and, if Purchaser breaches the provisions of this Section, Seller shall have the option of terminating this Agreement and retaining the Escrow Deposit as its liquidated damages.

**SECTION 18.16    Not an Offer.** Notwithstanding anything herein to the contrary, it is to be strictly understood and agreed that (a) the submission by Seller to Purchaser of any drafts of this Agreement or any correspondence with respect thereto shall (i) be deemed submission solely for Purchaser's consideration and not for acceptance and execution, (ii) have no binding force or effect, (iii) not constitute an option for the purchase of the Property or a lease or conveyance of the Property by Seller to Purchaser and (iv) not confer upon Purchaser or any other party any title or estate in the Property, (b) the terms and conditions of this Agreement shall not be binding upon either party hereto in any way unless and until it is unconditionally executed and delivered by both parties in their respective sole and absolute discretion and all conditions precedent to the

effectiveness thereof including, but not limited to, the delivery of the Escrow Deposit to Escrow Agent, shall have been fulfilled or waived, and (c) if this Agreement is not so executed and delivered for any reason whatsoever (including, without limitation, either party's willful or other refusal to do so or bad faith), neither party shall be liable to the other with respect to this Agreement on account of any written or parole representations, negotiations, any legal or equitable theory (including, without limitation, part performance, promissory estoppel, or undue enrichment) or otherwise.

**SECTION 18.17    Failure of Deposit**. If the payment made on account of the Escrow Deposit is by check, and if such check fails collection in due course, Seller, at its option, may declare this Agreement null, void and of no force and effect, and may pursue its remedies against Purchaser upon such check or in any other manner permitted by law, such remedies being cumulative.

**SECTION 18.18    No Waiver**. The failure of either party hereto to seek redress for any breach, or to insist upon the strict performance, of any covenant or condition of the Agreement by the other shall not be, or be deemed to be, a waiver of the breach or failure to perform (unless the time specified herein for the exercise of such right, or satisfaction of such condition, has expired), nor prevent a subsequent act or omission in violation of, or not strictly complying with, the terms hereof from constituting a default hereunder.

**SECTION 18.19    Severability**. If any term, condition or provision of this Agreement or the application thereof to any circumstance or party hereto, is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Agreement and the applicability of such term, condition or provision to other persons or circumstances shall not be affected thereby. Each term, condition or provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

**SECTION 18.20    No Survival**. The delivery and acceptance of the deed at the Closing shall be deemed to constitute full compliance by Seller with all of the terms, conditions and covenants of this Agreement on Seller's part to be performed, and, except as expressly set forth in this Agreement, the representations, warranties, covenants or other obligations of Seller set forth in this Agreement shall not survive the Closing, and no action based thereon shall be commenced after the Closing.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.
SIGNATURES FOLLOW ON THE NEXT PAGE.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

SELLER:

1414 UTICA AVENUE LENDER LLC,  SOLELY IN
ITS CAPACITY AS THE PLAN PROPONENT OF
1414 UTICA AVENUE LENDER LLC's AMENDED
PLAN OF REORGANIZATION FOR CORT &
MEDAS ASSOCIATES, LLC, AS DEBTOR

By: _____
    Name: Jason Leibowitz
    Title:  Manager


PURCHASER:

CALMARK EQUITIES CORP. OR AN ENTITY
OWNED OR CONTROLLED BY ITS PRINCIPAL

By: _____
    Name: MARK KOPLOWITZ
    Title: President/Sole Shareholder

## SCHEDULE I TO PURCHASE AND SALE AGREEMENT

## DEFINITIONS

For all purposes of this Agreement, the following terms shall have the respective meanings specified below:

"**Additional Deposit**" shall have the meaning set forth in Section 2.2.3.

"**Affiliate**" means a Person that: (a) directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with a specified Person; (b) is a director or officer of a specified Person or of an Affiliate of such specified Person within the meaning of clause (a) above; (c) is a partner, member, beneficiary of a trust or other owner of any stock or other evidence of beneficial ownership in a specified Person or an Affiliate of such specified Person within the meaning of clause (a) above; or (d) is related as an ancestor, descendant, sibling, or is the current spouse of a specified Person or an Affiliate of such specified Person within the meaning of clause (a) above.

"**Agreement**" means this Agreement, the Exhibits and Schedules and all amendments, modifications and extensions hereto and thereto.

"**Apportionment Date**" shall have the meaning set forth in Section 4.1.

"**Break Up Fee**" shall have the meaning set forth in Section 17.2.1.

"**Business Day**" means each day, except Saturdays, Sundays and all days observed by the federal government as legal holidays.

"**Cash Deposit**" shall have the meaning set forth in Section 2.2.2.

"**Closing**" shall have the meaning set forth in Section 8.1.

"**Closing Date**" shall have the meaning set forth in Section 8.1.

"**Closing Documents**" shall have the meaning set forth in Section 9.1.2.

"**Competing Bid**" shall have the meaning set forth in Section 15.2.

"**Condemnation**" means any condemnation, taking or any damages to the interest in the Real Estate by reason of a change of grade of any street, road or avenue.

"**Deed**" means the deed to the Real Estate to be delivered by Seller to Purchaser pursuant to Schedule IV.

"**Easement**" shall have the meaning set forth in Section 3.2.1.

"**Escrow Agent**" shall mean Horowitz PLLC.

"**Escrow Agreement**" shall have the meaning set forth in Section 2.2.3.

"**Escrow Deposit**" shall have the meaning set forth in Section 2.2.3.

"**Final Order**" shall mean an order, ruling, or judgment of the Bankruptcy Court (a) that is in full force and effect; and (b) that is not stayed; provided, however, that an order will be deemed a Final Order notwithstanding the filing of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other applicable rules.

"**Governmental Authority**" shall have the meaning set forth in Section 3.3.8.

"**Hazardous Material**" shall mean all materials and substances now or hereafter subject to any Environmental Laws, including (i) all substances which are designated pursuant to Section 311(b)(2)(A) of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1251, et seq., (ii) any element, compound, mixture, solution, or substance which is designated pursuant to Section 102 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., (iii) any hazardous waste having the characteristics which are identified under or listed pursuant to Section 3001 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq., (iv) any toxic pollutant listed under Section 307(a) of FWPCA, (v) any hazardous air pollutant which is listed under Section 112 of the Clean Air Act, 42 U.S.C. § 7401, et seq., (vi) any imminently hazardous chemical substance or mixture with respect to which action has been taken pursuant to Section 7 of the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq., (vii) "hazardous materials" within the meaning of the Hazardous Materials Transportation Act, 49 U.S.C. § 5101, et seq., (viii) any element or compound contained in the list of hazardous substances adopted by the United States Environmental Protection Agency ("EPA") or by the New York Department of Environmental Conservation ("DEC"), (ix) petroleum or petroleum by-products, (x) ACM, (xi) any radioactive material or substance, (xii) all toxic wastes, hazardous wastes and hazardous substances as defined by, used in, controlled by, or subject to all implementing regulations adopted and publications promulgated pursuant to the foregoing statutes, and (xiii) any other hazardous or toxic substance or pollutant identified in or regulated under any other applicable federal, state or local Environmental Laws.

"**Improvements**" shall have the meaning set forth in Section 2.1.1.

"**Initial Deposit**" shall have the meaning set forth in Section 2.2.2.

"**Law**" means any law, rule, code, regulation, ordinance, moratorium, injunctive proceeding, restriction or similar matter imposed by any federal, state, municipal or local government or any public or quasi-public board, authority, commission, agency or department thereof having jurisdiction over the Property, or any portion thereof and/or Purchaser or Seller.

"**Liens**" shall have the meaning set forth in Section 3.1.1.

"**Material Part**" shall have the meaning set forth in Section 13.2.

"**Net Proceeds**" shall have the meaning set forth in Section 3.1.1.

"**Non-Permitted Exceptions**" shall have the meaning set forth in Section 3.2.2.

"**Notices**" shall have the meaning set forth in Section 10.1.

"**Permitted Exceptions**" shall have the meaning set forth in Section 3.3.

"**Person**" means an individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, trust, unincorporated organization or the federal government or any state or local government or any agency or political subdivision thereof.

"**Personalty**" shall have the meaning set forth in Section 2.1.1.

"**Property**" shall have the meaning set forth in Section 2.1.1.

"**Purchase Price**" shall have the meaning set forth in Section 2.2.1.

"**Purchaser**" shall mean CALMARK EQUITIES CORP. OR AN ENTITY OWNED OR CONTROLLED BY ITS PRINCIPAL, MARK KOPLOWITZ

"**Purchaser-Related Parties**" means, individually and collectively, and to the extent applicable, (i) Purchaser, (ii) Affiliates of Purchaser, and (iii) the shareholders, officers, directors, employees, members and constituent partners of Purchaser and/or of any direct or indirect partner or member of or corporate joint-venturer with Purchaser, and/or of any Affiliate of Purchaser.

"**Purchaser's Controlling Member**" shall mean Mark Koplowitz.

"**Real Estate**" shall have the meaning set forth in Section 2.1.1.

"**RE Tax Returns**" shall have the meaning set forth in Section 4.5.

"**Scheduled Closing Date**" shall have the meaning set forth in Section 8.1.

"**Seller**" shall mean  1414 Utica Avenue Lender LLC, solely in its capacity as the Plan Proponent of 1414 Utica Avenue Lender's Amended Plan of Reorganization for CORT & MEDAS ASSOCIATES, LLC, as debtor.

"**Seller-Related Parties**" means individually and collectively, Seller and its officers, directors, members, employees, agents, representatives and contractors and Affiliates of Seller.

" **Broker**" shall have the meaning set forth in Article 11.

"**Title Company**" shall have the meaning set forth in Section 3.1.

"**Transfer Taxes**" shall have the meaning set forth in Section 4.4.

"**Unavoidable Delay**" shall mean any delays due to strikes, acts of God, governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty or other causes similarly beyond the control of Seller; provided, however, that any lack of funds shall not be deemed a cause beyond the control of Seller.

"**Violations**" shall have the meaning set forth in Section 3.3.8.

## SCHEDULE II

## PROPERTY DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn and County of Kings, City and State of New York, bounded and described as follows:

1414 UTICA AVENUE  - BLOCK 4784, LOT 35

[INSERT]

1376 UTICA AVENUE  - BLOCK 4784, LOT 20

[INSERT]

## SCHEDULE III

### ESCROW AGENT'S WIRING INSTRUCTIONS

ABA#:

BANK:

ACCT#:

ACCT NAME:

## SCHEDULE IV

## CLOSING DOCUMENTS TO BE DELIVERED BY SELLER

1.      Statutory form of bargain and sale deed without covenants (the **"Deed"**) for each of the two (2) properties, substantially in the form attached hereto as Exhibit B containing the covenant required by Section 13 of the Lien Law, and properly executed and acknowledged so as to convey the title required to be conveyed by Seller under this Agreement.

2.      Wire or Bank check(s), payable to the direct order of the appropriate tax collecting agencies or officials, in the amount of all documentary stamp and transfer and transfer gains taxes, and other taxes, fees and charges, payable by reason of or in connection with the conveyance and transfer of the Property Intentionally omitted.

3.      Copies of any required real property transfer tax returns properly executed and acknowledged by Seller and Purchaser, as applicable.

4.      All documents, as shall be reasonably necessary to evidence that Seller has proper authority to sell the Property and deliver the documents required to be delivered by Seller pursuant to this Agreement, together with such other documents reasonably requested by the title company to issue an owner's title of insurance to Purchaser in accordance with this Agreement.

5.      A certificate of a duly authorized representative of Seller, sworn to under penalties of perjury, setting forth Seller's U.S. tax identification number and stating that Seller is a **"United States person"** within the meaning of Sections 1445(f)(3) and 7701(a)(30) of the Code.

6.      Certificate of an authorized representative of Seller with respect to the authority of the person(s) executing this Agreement and the other Closing Documents on behalf of Seller.

7.      A Bill of Sale, without warranty, recourse or representation, conveying the Personalty to Purchaser substantially in the form attached hereto as Exhibit C.

8.      Certificate in form and substance reasonably acceptable to Purchaser, signed and acknowledged by an authorized representative of Seller, restating and attesting, except as otherwise permitted pursuant to the terms of this Agreement, to be true and correct as of the Closing Date each of the representing and warranties of Seller set forth in this Agreement.

## SCHEDULE V

## PURCHASER'S CLOSING DOCUMENTS

1.    All documents as shall be reasonably necessary to evidence that Purchaser has proper authority to purchase the Property and deliver the documents required to be delivered by Purchaser pursuant to this Agreement.

2.    Certificate of an authorized representative of Purchaser with respect to the authority of the person(s) executing this Agreement and the other Closing Documents on behalf of Purchaser.

3.    Certificate in form and substance reasonably acceptable to Seller, signed and acknowledged by an authorized representative of Purchaser, restating and attesting, except as otherwise permitted pursuant to the terms of this Agreement, to be true and correct as of the Closing Date each of the representing and warranties of Purchaser set forth in this Agreement.

## EXHIBIT A

## ESCROW AGREEMENT

[See Attached]

## ESCROW AGREEMENT

### BY AND BETWEEN

**1414 UTICA AVENUE LENDER LLC**, solely in its capacity as the Plan Proponent of 1414 Utica Avenue Lender's Amended Plan of Reorganization for CORT & MEDAS ASSOCIATES, LLC, as debtor

### AND

### CALMARK EQUITIES CORP. OR AN ENTITY OWNED OR CONTROLLED BY ITS PRINCIPAL, MARK KOPLOWITZ

### AND

### HOROWITZ PLLC, AS ESCROW AGENT

JULY ___, 2021

## ESCROW AGREEMENT

**ESCROW AGREEMENT** ("Agreement") made as of July ___, 2021 by and between 1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent of 1414 Utica Avenue Lender's Amended Plan of Reorganization for CORT & MEDAS ASSOCIATES, LLC, as debtor, with offices at _____, New York ("Seller"), and _____, LLC, a New York limited liability company, with offices at _____, New York ("Purchaser"), and **HOROWITZ PLLC**, a New York professional limited liability company, with offices at 96 Greenwich Street, New York, New York 10006 (the "Escrow Agent"). All capitalized terms used but not defined herein shall have the meaning assigned to them in the Purchase and Sale Agreement (as defined below).

Recitals: The following recitals are hereby incorporated into this Agreement:

**A.**     Purchaser and Seller have entered into a Purchase and Sale Agreement, dated as of July ___, 2021 (the "Purchase Agreement"), pursuant to which, among other things, Purchaser shall deposit: Two Hundred Five Thousand and 00/100 Dollars ($205,000.00) (the "Initial Deposit") into escrow with Escrow Agent concurrently upon execution of this Agreement.

**B.**     In the event that Purchaser is selected as the prevailing bidder or elects (in its sole discretion) to be designated back-up bidder at the Auction, on or prior to the earlier of: (a) two (2) Business Days after Purchaser is selected as the Prevailing Bidder; and (b) three (3) Business Days after the conclusion of the Auction, an amount (the "Additional Deposit") equal to an amount such that together with the Initial Deposit, the Escrow Fund (as defined hereinafter) shall be equal to at least 10% of the increased Purchase Price pursuant to the Purchase Agreement, so long as such increased Escrow Fund is not less than $1,000,000, as it may be subsequently amended at the Auction.

NOW, THEREFORE, the parties hereto as follows:

1.     Deposit and Acknowledgment of Receipt.

1.1     Concurrently with the execution and delivery of this Agreement, Purchaser has delivered to Escrow Agent, and Escrow Agent by its execution hereof acknowledges receipt of, Purchaser's wire transfer in the amount of Two Hundred Five Thousand and 00/100 Dollars ($205,000.00), payable to Escrow Agent.

1.2     Purchaser shall deliver to Escrow Agent by wire transfer payable to Escrow Agent the Additional Deposit in an amount equal to an amount such that together with the Initial Deposit, the Escrow Fund shall be equal to 10% of the increased Purchase Price pursuant to the Purchase Agreement, as it may be subsequently amended at the Auction, within five (5) Business Days after Purchaser is selected as the Prevailing Bidder.

1.3     Escrow Agent hereby agrees to hold the Escrow Fund in a non-interest-bearing account pending the disbursement of such Escrow Fund in accordance with the terms of this Agreement.

1.4    The Escrow Fund shall not be subject to lien or attachment by any creditor of any party hereto and shall be used solely for the purposes set forth in this Agreement. Amounts held in the Escrow Account shall not be available to, and shall not be used by, Horowitz PLLC to set off any obligations of either Purchaser or Seller owing to Horowitz PLLC in any capacity.

2.    Terms of Escrow.

2.1    Escrow Agent shall disburse amounts from the Escrow Fund, and any accrued interest thereon, upon delivery, by Seller and Purchaser to Escrow Agent, of joint written instructions executed by an authorized officer of both parties directing Escrow Agent to deliver to Seller or Purchaser, as the case may be, an amount equal to the amount to which it is entitled. Upon receipt of the joint written instructions, Escrow Agent shall release by wire transfer to an account or accounts designated by Seller or Purchaser, as the case may be, the amount specified in the joint written instructions.

2.2    Escrow Agent shall disburse amounts from the Escrow Fund to Seller upon receipt of written demand therefore, stating that Purchaser has defaulted in the performance of the Purchase Agreement and a summary of the facts and circumstances underlying such default; provided, however, that Escrow Agent shall not honor such demand until expiration of seven (7) business days after Escrow Agent shall have delivered a copy of such demand to Purchaser, nor thereafter if Escrow Agent shall have received timely written notice of objection from Purchaser in accordance with the provisions of Section 7.1 below.

2.3    Escrow Agent shall disburse amounts from the Escrow Fund to Purchaser upon receipt of written demand therefore, stating that the Purchase Agreement has been canceled in accordance with its terms and without default by Purchaser or that Seller has defaulted in the performance of the Purchase Agreement and a summary of the facts and circumstances underlying such default; provided, however, that Escrow Agent shall not honor such demand until expiration of seven (7) business days after Escrow Agent has delivered a copy of such demand to Seller, nor thereafter if Escrow Agent shall have received timely written notice of objection from Seller in accordance with the provisions of Section 7.1 below.

2.4    Notwithstanding anything to the contrary contained in this Agreement, in the event of a dispute concerning the Escrow Fund, the Escrow Agent shall not disburse any amounts from the Escrow Fund until its receipt of joint written instructions from Seller and Purchaser as set forth hereinabove or an order of a court of competent jurisdiction directing the disbursement of the Escrow Fund.

2.5    Upon the completion of the disbursements as set forth above, Escrow Agent shall have no further duties hereunder.

3.    Obligations and Liabilities of Escrow Agent.

3.1    The duties and obligations of Escrow Agent shall be determined solely by the express provisions of this Agreement.

3.2     Escrow Agent shall not be responsible in any manner whatsoever for any failure or inability of Purchaser or Seller to perform or comply with any of the provisions of the respective agreements between them.

3.3     Escrow Agent shall not be bound by any modification, cancellation or rescission of this Escrow Agreement unless in writing, signed by Purchaser and Seller and expressly consented to in writing by Escrow Agent.

3.4     Escrow Agent's duties hereunder are as a depository only, ministerial in nature, and Escrow Agent shall incur no liability whatsoever hereunder for any error of judgment, or any action taken or omitted hereunder, except for damages directly resulting from Escrow Agent's gross negligence or willful misconduct as determined by a final and non-appealable judgment of a court of competent jurisdiction.

3.5     Delivery of the Escrow Funds, along with any accrued interest thereon, by Escrow Agent pursuant to the provisions of this Agreement shall constitute a complete discharge and satisfaction of all obligations of Escrow Agent hereunder.

3.6     Nothing contained herein shall be deemed to preclude Escrow Agent at any time and for any reason from depositing the Escrow Fund into a court of competent jurisdiction upon prior notice to the parties hereto, and abiding by the determination of such court with respect thereto. In such event, such delivery shall constitute a complete discharge and release of Escrow Agent of its obligations hereunder.

3.7     Escrow Agent shall be entitled to rely conclusively upon any written notice, waiver, receipt, or other document which Escrow Agent believes in good faith to be genuine, including, without limitation, a written statement by Purchaser or Seller that they have complied with the terms of the Agreement with respect to a demand for payment.

3.8     In the event of any controversy or dispute under this Escrow Agreement or with respect to any question as to the construction hereof or any action to be taken or omitted by Escrow Agent, Escrow Agent shall be entitled to consult with counsel of its own choosing.

3.9     The Escrow Agent will deposit the Initial Deposit and any Additional Deposit (collectively, the "Escrow Fund") in its IOLA account at Citibank, N.A. (the "Bank"). Due to a recent change in federal law, the FDIC will guarantee only $250,000.00 of the Escrow Fund in the event that the Bank fails or is otherwise unable to pay the Escrow Fund. While the Escrow Agent is not aware of any circumstances that might suggest a risk of the failure of the Bank, the Escrow Agent is not in a position to advise the parties hereto of the condition or prospects of the Bank (financial or otherwise). Accordingly, as a condition of the Escrow Agent's acting as escrow agent, both Purchaser and Seller acknowledge and agree that the Escrow Agent will deposit the Escrow Fund at the Bank and that the Escrow Agent will have no liability whatsoever to any party for any loss caused by, arising out of, or related to the selection of the Bank (including, without limitation, if the Bank fails or is otherwise unable to pay the Escrow Fund), and Purchaser and Seller agree that they will not seek to hold the Escrow Agent liable for any loss, injury or damage whatsoever that may be incurred by either or both parties related to, caused by or arising out of the selection of the Bank (including, without limitation, if the Bank fails or is otherwise

unable to pay the Escrow Fund). Purchaser and Seller will each, jointly and severally, indemnify the Escrow Agent for any and all costs and expenses, including legal fees, incurred by the Escrow Agent related to, caused by, or arising out of the selection of the Bank, including but not limited to, seeking to recover all or any part of the Escrow Fund from the Bank. Purchaser and Seller each further acknowledge that the Escrow Agent has advised the parties hereto that Purchaser and Seller are free to choose another Escrow Agent in connection with the transaction who may or may not use another bank for the deposit of the Escrow Fund, and that Purchaser and Seller should each separately consult with independent lawyers, selected by each party, prior to signing this agreement, and that Purchaser and Seller have each had a reasonable opportunity to do so. In addition to signing this agreement below, each of Purchaser and Seller shall, by its authorized representative, initial and date at the place indicated adjacent to this paragraph indicating that each of Purchaser and Seller has read and understands and agrees to its terms.

4.    Expenses of Escrow Agent.    Escrow Agent shall serve without compensation, however, Seller shall be liable for one-half (½) and Purchaser shall be liable for one-half (½) of any reasonable out-of-pocket fees and expenses incurred by Escrow Agent in connection with any disputes directly arising from this Agreement, including reasonable counsel fees, if any. The parties shall pay any such amounts due Escrow Agent promptly upon its demand.

5.    Indemnification of Escrow Agent.    Purchaser and Seller agree, jointly and severally, to indemnify Escrow Agent and hold Escrow Agent harmless from any loss, liability and expenses which it incurs in connection with or arising out of its compliance with the terms of this Agreement, including the fees, costs and expenses of defending itself against any claims of liability hereunder, except for a loss, liability or expense arising solely from Escrow Agent's own gross negligence or willful misconduct as determined by a final and non-appealable judgment of a court of competent jurisdiction.

6.    Successor Escrow Agent.    In the event Escrow Agent is no longer able or willing to serve, Escrow Agent shall have the right, after consultation with Seller and Purchaser, to appoint a successor Escrow Agent who shall be bound by the terms and conditions set forth herein.

7.    Notices.

7.1    Any notice, request, demand or other communication permitted or required to be given hereunder shall be in writing and shall be deemed to have been given when such notice shall have been (a) sent by United States mail, postage prepaid to the addressee, or (b) delivered by a nationally recognized overnight courier or facsimile (to the extent a facsimile number is provided below) to the addressee; in each case at the address or facsimile number, as applicable, specified below:

If to Seller, to:

with a copy to:

If to Escrow Agent,
to:

If to Purchaser, to:

with a copy to:

Any notice or communication served upon Escrow Agent shall be accompanied by an affidavit of service upon all other parties upon whom such notice is required to be served.

    8.    Binding Effect; Further Assurances.

    8.1    This Agreement shall inure to the benefit of and shall be binding upon the respective heirs, personal representatives, successors, and assigns of the parties hereto.

    8.2    Seller and Purchaser hereto covenant that they will execute all instruments and documents and will take all steps which may be necessary in order to implement the provisions of this Agreement.

    9.    Governing Law; Forum.

    9.1    This Agreement shall be construed under and governed by the laws of the State of New York, without regard to its principles of conflicts of laws.

    9.2    Each party to this Agreement irrevocably consents and agrees that any dispute arising out of or in any way connected to this Agreement shall only be adjudicated by the Bankruptcy Court, provided that if the Bankruptcy Case has closed, each of the parties hereto irrevocably agrees that any Legal Proceeding with respect to this Agreement shall be brought and determined exclusively in the United States District Court for the Southern District of New York or if such Legal Proceeding may not be brought in such court for jurisdictional purposes, exclusively in the Supreme Court of New York sitting in the County of New York. Each of the parties hereto hereby (a) irrevocably submits with regard to any such Legal Proceeding to the exclusive personal jurisdiction of the aforesaid courts in the event any dispute arises out of this Agreement or any transaction contemplated hereby, (b) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court or that

such action is brought in an inconvenient forum and (c) agrees that it shall not bring any action relating to this Agreement or any transaction contemplated hereby in any court other than the state or federal courts referenced above. Each of the parties hereto further agrees to accept and acknowledge service of any and all process which may be served in any such Legal Proceeding in said courts in the State of New York, and agrees that service of process upon such party by a method permitted by the applicable Laws of the State of New York to such party's address as set forth in Section 7.1 hereto, will be deemed in every respect effective service of process upon such party, in any Legal Proceeding.

10.     Counterparts.  This Agreement may be executed in one or more counterparts (whether facsimile or original), each of which when taken together shall be deemed one and the same original instrument.

[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Escrow Agreement the day and year first above written.

SELLER:

1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT & MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District

By:  _____

     Name:
     Title:

PURCHASER:

CALMARK EQUITIES CORP. OR AN ENTITY OWNED OR CONTROLLED BY ITS PRINCIPAL, MARK KOPLOWITZ

By:  _____

     Name:  Mark Koplowitz
     Title:    President

ESCROW AGENT:

**HOROWITZ PLLC**

By:  _____

     Name: Kenneth P. Horowitz
     Title: Member

**EXHIBIT B**

**DEEDS**

[See Attached]

[Subject to Title Company Approval and Comments]

**THIS INDENTURE**, made the _____ day of _____, 2021. BETWEEN 1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT & MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District,

party of the first part, and

_____, LLC, a New York limited liability company, with offices at _____, New York,

party of the second part.

**WITNESSETH**, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

### THE CERTAIN PREMISES AND IMPROVEMENTS SITUATED THEREON AS MORE PARTICULARLY DESCRIBED ON SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF

**BEING** and intended to be the same premises conveyed by YR Real Estate Holdings, LLC to Grantor by deed dated December 29, 2009, recorded in the Office of the Registrar of the City of New York, Kings County, on January 13, 2010 in CFRN # 2010000013621.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises;

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** this conveyance is being made by 1414 Utica Avenue Lender LLC, as Plan Proponent for Cort & Medas Associates, LLC, debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, U.S. Bankruptcy Court, Eastern District, Chapter 11, Case No. 19-41313. A copy of said Order Approving Sale is being attached hereto as Exhibit "A."

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed as of the day and year first above written.

> 1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT & MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District

> By:_____
>    Name:
>    Title: Authorized Signatory

STATE OF NEW YORK   )
                      ) ss:
COUNTY OF _____)

On the ____ day of _____, 2021, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

<u>SCHEDULE A</u>

[See Attached]

*BARGAIN AND SALE DEED*

**Without Covenant Against Grantor's Acts**

1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT & MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District

*TO*

_____ , LLC

*PREMISES:*

**1414 UTICA AVENUE
BROOKLYN, NEW YORK**

**BLOCK: 4784
LOT: 35**

*RECORD AND RETURN TO:*

**Deutsch & Schneider, LLP
79-37 Myrtle Avenue
Glendale, New York 11385**

**THIS INDENTURE**, made the _____ day of _____, 2021, BETWEEN 1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT & MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District,

party of the first part, and

_____, LLC , a New York limited liability company, with offices at _____, New York,

party of the second part.

**WITNESSETH**, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

### THE CERTAIN PREMISES AND IMPROVEMENTS SITUATED THEREON AS MORE PARTICULARLY DESCRIBED ON SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF

**BEING** and intended to be the same premises conveyed by 1376 Utica Avenue LLC, to Grantor by deed dated December 29, 2009, recorded in the Office of the Registrar of the City of New York, Kings County, on January 26, 2010 in CFRN # 2010000028800.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises;

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** this conveyance is being made by 1414 Utica Avenue Lender LLC, as Plan Proponent for Cort & Medas Associates, LLC, debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, U.S. Bankruptcy Court, Eastern District, Chapter 11, Case No. 19-41313. A copy of said Order Approving Sale is being attached hereto as Exhibit "A."

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed as of the day and year first above written.

> 1414 UTICA AVENUE LENDER LLC, solely
> in its capacity as the Plan Proponent for CORT
> & MEDAS ASSOCIATES, LLC, as debtor,
> pursuant to Order Approving Sale of Debtor's
> Real Property, entered on _____, 2021,
> U.S. Bankruptcy Court, Eastern District

> By: _____
>     Name:
>     Title: Authorized Signatory

STATE OF NEW YORK   )
                      ) ss:
COUNTY OF _____)

On the ____ day of _____, 2021, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

## SCHEDULE A

[See Attached]

*BARGAIN AND SALE DEED*

**Without Covenant Against Grantor's Acts**

1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT &
MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real
Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District,

*TO*

_____ , LLC

**PREMISES:**

**1376 UTICA AVENUE**
**BROOKLYN, NEW YORK**

**BLOCK: 4784**
**LOT: 20**

*RECORD AND RETURN TO:*

**Deutsch & Schneider, LLP**
**79-37 Myrtle Avenue**
**Glendale, New York 11385**

**EXHIBIT C**

**FORM OF BILL OF SALE**

[See attached]

## BILL OF SALE

THIS BILL OF SALE is made and executed as of the _____ day of _____, 2021 from 1414 UTICA AVENUE LENDER LLC, solely in its capacity as the Plan Proponent for CORT & MEDAS ASSOCIATES, LLC, as debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, 2021, U.S. Bankruptcy Court, Eastern District ("Seller"), to _____, having an address at _____ ("Purchaser").

FOR AND IN CONSIDERATION of the sum of Ten Dollars and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Seller does hereby bargain, sell, convey, deliver, assign, transfer, set over and grant to Purchaser, and to their successors and assigns, all right, title and interest of Seller in and to any and all fixtures, machinery, equipment, furniture and other tangible personal property not owned by any tenant or other occupant of the Property (the "Personalty") affixed or attached to, installed or placed in or upon and to be used for or usable in any present or future enjoyment, occupancy or operation of the building and related improvements comprising the property located at and commonly known as 1414 Utica Avenue and 1376 Utica Avenue, Brooklyn, New York.

THIS conveyance is being made by 1414 Utica Avenue Lender LLC, as Plan Proponent for Cort & Medas Associates, LLC, debtor, pursuant to Order Approving Sale of Debtor's Real Property, entered on _____, U.S. Bankruptcy Court, Eastern District, Chapter 11, Case No. 19-41313. A copy of said Order Approving Sale is being attached hereto as Exhibit "A."

Title to all the Personalty shall pass to Purchaser upon delivery of this Bill of Sale free and clear of all claims, liens or encumbrances of any kind. Any sales tax, if any, payable in respect of the Personalty shall be the sole responsibility of Purchaser.

Seller makes no warranties or representations whatsoever, including, without limitation, with respect to quality, fitness or merchantability of the Personalty; the Personalty is being transferred "AS IS" physical condition and this Bill of Sale is made without recourse to Seller.

This Bill of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of the day and year first written above.

> 1414 UTICA AVENUE LENDER LLC, solely
> in its capacity as the Plan Proponent for CORT
> & MEDAS ASSOCIATES, LLC, as debtor,
> pursuant to Order Approving Sale of Debtor's
> Real Property, entered on _____, 2021,
> U.S. Bankruptcy Court, Eastern District

By:  _____
     Name:
     Title: Authorized Signatory